*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SANDRA M. GRIFFIN,

*Petitioner-Appellant,*

*v.*

No. 04-3302

SHIRLEY ROGERS, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-01127—George C. Smith, District Judge.

Argued: January 27, 2005

Decided and Filed: March 3, 2005

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Stephen P. Hardwick, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Thelma Thomas Price, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Stephen P. Hardwick, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Thelma Thomas Price, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined. GILMAN, J. (pp. 12-13), delivered a separate dissenting opinion.

---

## OPINION

---

MERRITT, Circuit Judge. Sandra Griffin filed a petition for habeas relief in April of 1997. In September of 1998, the District Court dismissed her petition without prejudice as she had not exhausted her state remedies. When she returned to federal court in October of 1999, her re-filed petition was dismissed as untimely pursuant to the one-year limitations period under 28 U.S.C. § 2244(d)(1). In 2002, this Court vacated the District Court's dismissal of Griffin's petition and remanded for further proceedings in order to determine whether the petitioner was entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647 (2002). In January of 2004, the District Court, adopting the Report and Recommendation of the Magistrate Judge, ruled that Griffin was not

1

entitled to equitable tolling and dismissed the case for failure to file within the limitations period. Griffin timely appealed the District Court's dismissal.

In *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), this Court adopted a stay and abeyance procedure for habeas petitions that raise both exhausted and unexhausted claims. The exhausted portions of these petitions were to be stayed while the petitioner returned to state court. These stays were to be conditioned upon the petitioner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed. Also, in *Palmer*, this Court determined that it would be appropriate to apply these stays retroactively to petitioners like Griffin, whose claims were dismissed rather than stayed.

When this case was last before this Court, it was unclear whether Griffin had complied with the 30-day window that *Palmer* prescribes for pursuing state remedies after a federal dismissal. The record simply did not include that information. On remand, it was conceded that Griffin did not proceed to state court for over six months, well beyond the 30-day window suggested by *Palmer*. The District Court refused to equitably toll the limitations period as Griffin had not filed within the 30-day time frame. The only issue on appeal is whether the District Court was correct in rejecting Griffin's request for equitable tolling.

While Griffin is not entitled to the mandatory equitable tolling prescribed in *Palmer*, the District Court was incorrect to treat the 30-day window as a hard, retroactive deadline that precludes the court's consideration of her claims on the merits. Even if Griffin is not entitled to the automatic equitable tolling under *Palmer*, she is entitled to relief under this Court's traditional equitable tolling analysis. The dismissal of the District Court is therefore REVERSED and the petition is REMANDED for consideration on the merits.

## I

This Court thoroughly summarized the factual and procedural history essential to Griffin's current appeal in its 2002 opinion:

> In 1990, a trial judge in Ohio state court found Sandra Maxwell Griffin guilty of complicity to aggravated murder with specifications, complicity to unlawful possession of a dangerous ordnance, complicity to grand theft, and complicity to aggravated robbery with a firearm specification. Griffin then obtained new counsel and unsuccessfully appealed her case to the Ohio Supreme Court, arguing that the trial court had violated her Fifth, Eighth, and Fourteenth Amendment rights by not following certain state laws regarding her waiver of trial by jury or by three-judge panel and regarding the length of her sentence. She lost her appeals, and her conviction became final in 1992.
>
> The Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, and prisoners whose state convictions already had become final were required to file any petitions for habeas corpus relief within one year of that date. *See Isham v. Randle*, 226 F.3d 691, 693 (6th Cir. 2000, *cert. denied*, 531 U.S. 1201 (2001). Represented by the Ohio Public Defender's Office, Griffin filed for habeas corpus relief on April 22, 1997. The petition was assigned to Judge Holschuh. Although in her initial petition Griffin raised just one ground for relief, namely the trial court's failure to follow "mandatory statutory requirements of a proceeding" in violation of her due process and equal protection rights, J.A. at 16, in her reply to the warden's return of writ she expanded her claims. Griffin argued that her waiver of trial by jury or by a three-judge panel, as provided under Ohio law,

was neither knowing nor intelligent and that her sentence exceeded that permitted under law. The district court determined that these were "clearly distinct from the argument that she presented to the state courts," noted that the new arguments "appear to have been procedurally defaulted," and offered Griffin the opportunity to demonstrate cause and prejudice before the court would dismiss the claims as procedurally defaulted. J.A. at 66-68 (Dist. Ct. Order 3/16/98). Griffin argued that the cause of her failure to present the arguments in state court was her counsel's ineffective assistance.

Judge Holschuh ruled that, although ineffective assistance of appellate counsel can constitute cause for procedural default, the petitioner must present the ineffective assistance claim itself to the state courts before using it to excuse the default. Because Griffin had not brought that claim to the state courts, she could not yet present it to the federal court in a habeas petition. Judge Holschuh concluded, "If she wishes, at some point, to make such an [ineffective assistance] argument here, petitioner must present her claim of ineffective assistance of counsel to the state courts." J.A. at 99 (Dist. Ct. Order 9/30/98). On September 30, 1998, the court denied her petition and dismissed the case without prejudice for her failure "to establish cause for her procedural default." J.A. at 101.

308 F.3d at 649-50. After her habeas petition was dismissed, Griffin filed an Application to Reopen in state court pursuant to Ohio Rule of Appellate Procedure 26(B) in order to pursue her unexhausted ineffective assistance claim.

When this case was last before this Court, the record did not indicate when Griffin filed this Application to Reopen. The current record reflects that Griffin, represented by the Ohio Public Defender's Office, filed her Application to Reopen on April 14, 1999, approximately six and one half months after the District Court's dismissal on September 30, 1998. J.A. at 216 (Application for Reopening). This Application was dismissed as untimely by the Ohio Court of Appeals on May 24, 1999. J.A. 229 (Ohio Court of Appeals Judgment). The Ohio Supreme Court dismissed her appeal without opinion on September 22, 1999.

After the dismissal of her Application to Reopen, Griffin attempted to return to federal court to pursue her habeas petition:

Griffin then returned to Judge Holschuh, filing on October 15, 1999, a habeas petition under her previous case number. In her re-filing, she alerted the court to the fact that she was filing it "under the original case number," because it merely continued her previous attack. She also noted that, because her previous filing had been dismissed without prejudice to permit exhaustion, this subsequent filing was not a "second or successive" petition prohibited under 28 U.S.C. § 2244(b). J.A. at 102-03. In this petition, Griffin also included notice of the claims that she had brought in her state Application to Reopen. However, on Friday, October 22, Judge Holschuh ordered the clerk to strike Griffin's new filing under the previous case number and directed the clerk to file it with a new case number and assign it to a judge using the "ordinary selection process." J.A. at 118 (Dist. Ct. Order 10/22/99). Judge Holschuh noted that because the previous case had closed and the petitioner had offered no grounds to reopen the previous case, the petition should be filed under a different case number, and the district judge to which it would then be assigned should consider independently whether to entertain the petition or reject it as a second or successive petition. Judge Holschuh stated that "[t]he assignment or non-assignment of a new civil number to a case is obviously not conclusive on the issue of whether the petitioner is entitled to file a second habeas corpus petition," and "[n]othing in

this order is intended to convey any opinion as to whether the new petition is or is not a successive petition or has otherwise been properly filed." J.A. at 117-18.

Griffin re-filed her second petition on Monday, October 25, and it was given a new case number and assigned to Judge Smith. After briefing, Judge Smith dismissed the action for failure to file within the one-year limitation period for § 2254 actions. The district court noted that when Griffin filed her first habeas petition on April 22, 1997, two days before the one-year deadline was to have run, 363 days of her statute of limitations had lapsed. That petition had been dismissed on September 30, 1998. Without knowing the actual date of her state court filing, the district court assumed that Griffin immediately filed her state court application and that this filing tolled the running of her federal statute of limitations. The district court ruled that when the state court application was resolved on September 22, 1999, Griffin had two days in which to return to federal court. She did not submit her second petition until October 15, 1999, after the statute of limitations had run. Therefore, the district court dismissed Griffin's petition.

308 F.3d at 650. Griffin then timely appealed, and this Court vacated the dismissal. *Griffin*, 308 F.3d at 656. This Court determined that the District Court had not applied the correct standard regarding Griffin's re-filing. When the District Court dismissed her petition, Griffin did not have two days remaining under the statutory limitations period. Instead, her statutory window of opportunity had already expired. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). But, this Court found that the District Court should have determined whether or not Griffin was entitled to equitable tolling under *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002). We found that Griffin's limitation period should be tolled during the pendency of her original habeas action, 308 F.3d at 651-52, and for the period between her September 1999 state court dismissal and her return to federal court in October 1999, *id.* at 655. But, we were unaware of when Griffin actually filed her Application to Reopen in the Ohio courts. Concluding that Griffin would certainly be entitled to equitable tolling if she could show filing in accordance with *Palmer*, we vacated and remanded for further consideration. *Id.*

On remand, Griffin conceded that she had taken over six months to bring her Application to Reopen, and the District Court determined that she was not entitled to equitable tolling under *Palmer*. The District Court, adopting the recommendation of the magistrate, found that *Palmer* created a retroactive deadline for habeas petitioners. J.A. 284 (Report and Recommendation) ("Petitioner has clearly not met the time limits established by *Palmer*. Strict application of that case and of the Sixth Circuit's mandate in this case militate against equitable tolling").

## II.

"Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001)); *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling."'") (citations omitted); *id.* at 49-50 ("Congress must be presumed to draft limitations periods in light of this background principle."). In the present case, there are two ways that equitable tolling could apply. First, in *Palmer v. Carlton*, this Court adopted a stay-and-abeyance procedure, which effects a mandatory form of equitable tolling for the narrow group of cases in which a mixed petition is dismissed near or after the expiration of the AEDPA limitations period. Our Court has determined that if such a petitioner files any unexhausted claims in state court within 30 days of dismissal and re-files in federal court within 30 days of exhaustion, the re-filed petition will automatically be considered timely. If this mandatory equitable tolling does not apply,

this Court may still equitably toll the limitations period based on the traditional equitable factors as outlined by this court in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1998).

## A.

In the Antiterrorism and Effective Death Penalty Act (AEDPA), Congress added a statute of limitations for habeas corpus petitions providing in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the  latest of–

>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review

>> \*\*\*

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). AEDPA provided no grace period for habeas corpus claims arising from convictions such as Griffin's that became final prior to the statute's enactment. As the failure to provide such a grace period would have rendered AEDPA unconstitutional, this Circuit provided a one-year grace period for convictions that became final prior to April 24, 1996, the effective date of AEDPA. *See Isham v. Randle*, 226 F.3d 691, 693 (6th Cir. 2000), *cert. denied*, 531 U.S. 1201 (2001) (citing *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21 (1982)). In the present case, Griffin filed her habeas petition on April 22, 1997, just two days shy of the grace period's expiration.

Since AEDPA's passage, courts have also struggled to determine how to address the limitations questions of timely-filed habeas petitions raising unexhausted claims. In a pre-AEDPA decision, *Rose v. Lundy*, 455 U.S. 509, 522 (1982), the Supreme Court had directed federal courts that it was proper to dismiss petitions that contained both exhausted and unexhausted claims ("mixed petitions"). Before AEDPA, such a dismissal permitted plaintiffs to exhaust their remaining state claims and return to federal court without a time limitation. In *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), however, the Supreme Court determined that the AEDPA limitations period does not toll during the pendency of the habeas petition itself. While in federal court, tolling is allowed only during the time the petition is pending in state court. Thus, when a case is dismissed pursuant to *Rose*, the limitations period generally will have expired, foreclosing the possibility of a timely re-filing in accordance with § 2244(d)(1). *See id.*; *see also id.* at 186 (Breyer, J., dissenting) (pointing out that district courts take on average 268 days to dismiss petitions on procedural grounds). In cases like Griffin's, where the initial petition is filed at the end (or near the end) of the limitations period, a *Rose* dismissal will effectively preclude the possibility of a re-filing consistent with the AEDPA limitations period.[1]

In *Duncan*, Justice Stevens wrote a concurring opinion joined by Justice Souter to address the complications arising from *Rose* and the new AEDPA limitations period. 533 U.S. at 182

---

[1]The fact that Griffin did not file her habeas petition until two days before the expiration of the grace period is essentially irrelevant. Even if Griffin had filed on the effective date of AEDPA with a full year remaining in the limitations period, the *Rose* dismissal did not occur until seventeen months after her initial filing. As the limitations period would not have tolled during the pendency of her initial federal petition, her subsequent re-filing would still be barred.

(Stevens, J., concurring).   Justice Stevens, recognizing the possibility that Congress had "overlooked" this potential problem, urged the circuit courts to consider two uses of the equitable powers of the federal courts to ensure that petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by AEDPA are not barred from having their federal claims heard.  *Id.* at 182-84.  First, Justice Stevens suggested that courts confronted with a mixed petition could stay the proceedings rather than dismiss them completely.  *Id.* at 182-83.  Under this stay and abeyance procedure, courts retain jurisdiction over the exhausted claims, dismiss the unexhausted claims, and stay the habeas proceedings pending the complete exhaustion of state remedies.  Second, Justice Stevens urged the federal courts to equitably toll the limitations period for petitioners who initially invoked the court's jurisdiction during the statutory one-year period.  *Id.* at 183 ("[N]either the Court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity.").

Shortly thereafter, the Second Circuit addressed the issue raised by Justice Stevens.  *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001).  The petitioner in *Zarvela* filed his habeas petition with only two days remaining in the limitations period.  *Id.* at 377.  Subsequently, he sought permission to withdraw the petition without prejudice so that he could exhaust a new claim in the state courts.  *Id.* The District Court granted his motion.  *Id.* Nine days later, he filed his new claim in state court; fourteen days after the state appellate decision was rendered, he re-filed his federal habeas petition. *Id.* The District Court dismissed his petition as untimely.  *Id.* The Second Circuit held that the District Court confronted with Zarvela's mixed petition should have issued a stay rather than grant the petitioner's motion to withdraw.  *Id.*at 380, 383 (noting that a stay "will be the *only* appropriate course in cases like Zarvela's where an outright dismissal 'could jeopardize the timeliness of a collateral attack.'") (citing *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. 2000)) (emphasis added). Such a stay, the court ruled, should have been conditioned upon the petitioner's "prompt initiation of state court exhaustion and his prompt return to federal court after completion of exhaustion." 254 F.3d at 376-77.   Thus, the appellate court directed district courts prospectively to "explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal curt within a similarly brief interval, normally 30 days after state court exhaustion is completed."   Without using the language of equitable tolling,[2] the circuit court found that the petitioner was "entitled to have his petition treated as if it had been stayed, provided his entry to the state courts and his return occurred promptly." Finding that the petitioner would have complied with the timeliness conditions of the stay that should have been granted, the appellate court reversed and remanded for further proceedings.

In *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), this Court endorsed the stay and abeyance procedure adopted by the Second Circuit in *Zarvela*.  The court wrote:

> The Second Circuit [stay and abeyance] approach is eminently reasonable.   It addresses the equitable concerns raised by Justice Stevens in *Duncan*, preserves the interests in comity embraced by *Lundy*, and prevents the potential abuse of the writ perpetrated by some petitioners.

*Id.*  They also embraced this procedure's retroactive application to petitions that had been dismissed rather than stayed.  *Id.* The petitioner in *Palmer* had filed his original habeas petition on the last day of the limitations period.  *Id.* at 779.  His motion for voluntary dismissal without prejudice was granted by the District Court on March 2, 1999.  *Id.* A previously-filed state proceeding was dismissed on March 22, 1999.  *Id.* The petitioner re-filed his habeas action on May 24, 1999, and

---

[2]In fact, the *Zarvela* court indicated that equitable tolling analysis might have been necessary had the petitioner's case not been held to be timely under the stay-and-abeyance procedure.  254 F.3d at 383 & n.6.

the District Court determined that this filing was untimely. *Id.* On appeal, this Court determined that the dismissal should be affirmed:

> Nevertheless, adoption of the Second Circuit's approach in this case would not afford Palmer the relief he seeks. Although his state-court remedies were exhausted on March 22, 1999, he waited until May 24, 1999, before he returned to federal court and filed a second habeas petition. This wait amounted to more than the "normal" 30-day period suggested by the Second Circuit as a reasonable period for a petitioner to return to federal jurisdiction, and the record offers no reason for the two-month delay.

*Id*. at 781-82. As the petitioner waited sixty days after his state court dismissal to re-file his habeas petition, he would not have complied with the retroactive stay contemplated by the *Zarvela* court.

Like the *Zarvela* court, the *Palmer* court did not conduct a traditional equitable tolling analysis. Instead, it simply determined that had the petitioner's case been stayed conditionally upon the two 30-day filing windows, the petitioner would not have complied. 276 F.3d at 781-82. Notably, the court did not indicate that the failure to comply with this "normal" time period was dispositive. Indeed, the court suggested that an adequate explanation might have excused the delay. *Id.* ("[T]he record offers no reason for the two-month delay.").

But, Palmer offered no reason for his delay that would have permitted the court to consider whether equitable tolling was appropriate. Nor could he have. Between the March 2 habeas dismissal and the May 24 habeas re-filing, the petitioner does not appear to have filed any additional proceedings in the state court. Instead, the petitioner was relying on a previously-filed state action that sought declaratory relief on purely state grounds. *Id.* at 780 ("[T]his pleading did not present a federal question for review."); *Palmer v. Tennessee Dep't of Correction*, 1998 WL 870534 (Tenn. Ct. App. 1998), appeal denied (Mar. 22, 1999) (raising Tennessee statutory and Tennessee constitutional claims but no federal constitutional claims). Palmer was a poor candidate for equitable tolling not simply because he waited sixty days after his state proceedings were completely concluded to re-file his federal habeas action, but because he did not bring any federal challenges whatsoever during this time period.

In *Hargrove v. Brigano*, 300 F.3d 717 (6th Cir. 2002), this Court more fully endorsed the stay-and-abeyance procedure in the context of AEDPA statute of limitations. In *Hargrove*, the petitioner sought habeas relief on the grounds of constitutionally insufficient evidence. *Id.* at 718. Since the pro se petitioner had never filed an appeal, the District Court dismissed the petition without prejudice in order for the petitioner to exhaust his state remedies. *Id*. Yet, rather than staying the petition, the District Court, acting prospectively, ordered the tolling of the AEDPA limitations period conditioned on the petitioner's pursuing his state remedies within 30 days of the dismissal and returning to federal court within 30 days after exhaustion. *Id.* The warden challenged this prospective order of equitable tolling, arguing that the issue was not within the jurisdiction of the dismissing court. *Id*. at 719. Instead, the warden argued that equitable tolling should be decided by the court receiving the subsequent, untimely petition after exhaustion. *Id.* This Court found that the District Court's prospective equitable tolling was reasonable. *Id*. at 720, 721 ("Although the district court did not issue a stay in this case, it achieved the same result reached in *Zarvela* and approved in *Palmer*.").

Again, in *Hargrove*, our court did not actually conduct an "equitable tolling" analysis.[3] It merely recognized that under the retroactive stay-and-abeyance rule of *Palmer* equitable tolling was proper as a matter of law for those petitioners whose petitions are dismissed without prejudice for the purpose of exhausting state claims. As this Court held previously, "*Palmer* introduces a new period of ***mandatory*** equitable tolling for petitioners who filed their federal habeas petitions within the statute of limitations but were forced to return to state court to exhaust certain claims." *Griffin*, 308 F.3d at 654 (emphasis added). The *Zarvela-Palmer-Hargrove* line of cases dictates that regardless of the equities of the situation, the courts will mechanically permit a re-filing that would have been available had the case been conditionally stayed rather than dismissed.

In the present case, Griffin is not entitled to the automatic equitable tolling mandated by *Palmer*. As her case was dismissed without prejudice on September 30, 1998 prior to both *Duncan* and *Palmer*, the District Court did not use the stay-and-abeyance procedure. Thus, when the case was dismissed, her AEDPA limitations period had already expired. Had a stay been issued rather than a dismissal, the stay would normally be conditioned upon her filing of unexhausted claims in state court within 30 days and returning to federal court within 30 days of exhaustion. But Griffin did not file her application for delayed appeal with the Ohio courts until April 14, 1999, nearly six and one half months after her District Court dismissal. As she did not comply with the 30-day guideline, she is not entitled to mandatory equitable tolling.

**B.**

As the mandatory equitable tolling rule of *Palmer* is not applicable in the present case, we turn to the traditional equitable tolling analysis. This Court reviews de novo the District Court's decision not to apply equitable tolling. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). In deciding whether equitable tolling should apply, courts in this Circuit consider the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). These five factors "are not comprehensive, nor is each of the five factors relevant in all cases." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Instead, courts must consider equitable tolling on a "case-by-case basis." *Id.*; *King*, 378 F.3d at 553.

In applying the *Andrews* factors to the present case, the only filing at issue is Griffin's application to reopen her direct appeal in the Ohio courts.[4] When her petition was dismissed on

---

[3] The *Hargrove* Court did suggest that equitable tolling cases should be based on a consideration of the factors put forth by the Court in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). *See Hargrove*, 300 F.3d at 719-20 & n.4. But, in its resolution of the case, the Court did not analyze these factors. Rather, it applied *Zarvela* and *Palmer* to determine that prospective equitable tolling would operate as a stay and abeyance. Indeed, given the federal courts' aversion to issuing advisory opinions, *see Keene Corp. v. U.S.*, 508 U.S. 200, 217 & n.13 (1993), the *Hargrove* Court could not have embarked upon an equitable analysis. *Hargrove* recognizes that the 30-day windows operate as a matter of law in this Circuit.

[4] As this Court has found previously, Griffin returned to the federal courts in a timely manner after exhausting her claims in state court. *Griffin*, 308 F.3d at 655. Her application to reopen was dismissed on May 24, 1999. The Supreme Court dismissed her appeal on September 22, 1999, and Griffin re-filed her habeas petition on October 15, 1999.

September 30, 1998, her statutory limitations period under AEDPA had already expired.  *See Duncan*, 533 U.S. at 181-82.  But, under the operation of *Palmer*, if Griffin had returned to state court within 30 days, her petition would proceed to the merits.  Thus, in applying the five-factor test, this Court must consider only Griffin's failure to file her application for delayed appeal by October 30, 1998 and whether her untimely filing on April 14, 1999, evidences such neglect on the part of the petitioner as to preclude equitable tolling.

   *1.  Lack of Actual or Constructive Knowledge of the Filing Requirement and Reasonable Ignorance*.  The Supreme Court has acknowledged that equitable tolling is sometimes appropriate when a litigant has received inadequate notice. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984).  Indeed, "[e]quitable tolling focuses primarily on the *plaintiff's* excusable ignorance of the limitations period." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (emphasis in original).  Along these lines, Griffin contends that she had no reason to know that she was required to file within 30 days of her dismissal from federal court.  This contention is difficult to rebut.  This 30-day window was adopted by the *Palmer* Court in January 2002, drawing on the Second Circuit's 2001 opinion in *Zarvela*.  Yet Griffin failed to file within this 30-day window in October 1998, over three years before the time frame was adopted in this circuit.  Moreover, nothing in the District Court's dismissal indicated that Griffin need bring her state proceeding by a certain deadline or within a certain time frame.  The order of dismissal without prejudice was entirely silent as to how Griffin should proceed in order to bring a timely habeas petition.  *See* J.A. 100 (Opinion and Order, Sept. 30, 1998); *see also Geeter v. Bouchard*, 293 F. Supp. 2d 773 (E.D. Mich. 2003) (dismissing the petition with explicit instructions to file state proceedings within 30 days and return to federal court within 30 days of exhaustion).  To the contrary, in the dismissal without prejudice, Judge Holschuh indicated that Griffin could proceed to exhaust her state claims and return to federal court:

>   Petitioner has a remedy in state court if she can re-open her direct appeal to assert these claims.  She has not filed an application to reopen her appeal under Rule 26(B), Ohio R. App. P.  In *State v. Murnahan*, the Ohio Supreme Court held that a person must bring a claim of ineffective assistance of appellate counsel through an application for delayed reconsideration in the court where the alleged error took place.  In order to fully exhaust state remedies, if delayed reconsideration is denied, the person must appeal that denial to the Ohio Supreme Court. *Murnahan*, 63 Ohio St. 3d 60, 66 (1992); *see also, Rust v. Zent*, 17 F.3d at 159-60.  Since petitioner has not yet filed an application to reopen her appeal with the state court of appeals that remedy is still available to her, and she has not exhausted her state remedies.
>
>   . . .
>
>   If she wishes at some point, to make such an argument here, petitioner must present her claim of ineffective assistance of counsel to the state courts.

JA 103-04, 105.  While the dismissal did not mislead Griffin into believing that she would have six months or any other stated amount of time for the trip to state court and back, the dismissal does explain how she could procedurally exhaust her claims before returning "to make such an argument here" in federal court.

   The AEDPA statute itself did not provide notice as to how Griffin should proceed.  Pursuant to the 2001 Supreme Court opinion in *Duncan*, Griffin's limitations period had already expired when her petition was dismissed in September 1998.  Even had Griffin filed her *Murnahan* application instantaneously, she would not have been able to take advantage of the statutory tolling provisions.  But at the time of dismissal, Griffin and her attorney were ignorant of this expiration just as was the District Court that dismissed the petition.  From the get-go, she was in the middle of a process with

undefined rules. Neither the District Court's dismissal, the statute, nor the case law gave her any notice of what deadlines should be observed in order to preserve the timeliness of her federal petition. To be certain, "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). But, Griffin's ignorance of the filing deadline given the unstable and unsettled nature of AEDPA at the crucial time of mistake was reasonable and supports her argument for tolling.

2. *Diligence in Pursuing Her Rights*. After considering a petitioner's claim of ignorance, this Court turns to the reasonableness of the petitioner's actions in seeking relief. The proper considerations are Griffin's diligence in pursuing her rights and the reasonableness of her ignorance of the effect of her delay. *See King*, 378 F.3d at 553. After her habeas claim was dismissed on September 30, 1998, Griffin, represented by her attorney did not file in federal court until six and one half months later on April 14, 1999. This delay certainly does not indicate an "extraordinarily long period of unexplained idleness," *Cook*, 295 F.3d at 522. Griffin had not simply stopped pursuing relief. Instead, she was represented by counsel, who was acting on her behalf. And, under the circumstances, she was reasonably active in responding to the dismissal.

To be certain, the principles of equitable tolling do not extend to "garden variety" claims of excusable neglect on the part of a litigant's attorney. *Irwin*, 498 U.S. at 96. Equitable tolling might not be appropriate had Griffin's attorney been aware of a deadline and negligently failed to file on time or if Griffin's attorney was negligent in not ascertaining the filing deadline. But, where the law is unclear, constitutional review should not be forfeited unless there has been a lack of good faith diligence on the part of the petitioner herself. Here counsel had to prepare and file a complex record and research complex questions of law before filing her petition in state court. In the absence of any known deadline, six months for preparation and filing by a busy public defender's office is not unreasonable. Counsel could not know that the state would argue that "equity" would require the retroactive application of deadlines created by cases decided two or three years later.

3. *Absence of Prejudice*. "Absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003); *Dunlap*, 250 F.3d at 1009 ("Prejudice may only be considered if other factors of the test are met and therefore can only weigh in the government's favor."). As Griffin has made a plausible case for equitable tolling based on the first four factors, it is appropriate to consider whether equitably tolling the statute of limitations will prejudice the respondent. In *Dunlap*, this Court rejected the notion that "the government is always prejudiced when there is a collateral attack." *Dunlap*, 250 F.3d at 1009. It is difficult to claim that forcing the warden to make an argument on the merits of Griffin's petition will be prejudicial to the state's cause. In fact, the warden addresses the merits of Griffin's underlying claim in its brief. Appellee's Br. at 28-29. As this is not a death penalty case, there is no support for the argument that Griffin is simply trying to drag out the proceedings. In this case, it does not appear that equitably tolling the one-year statute of limitations would prejudice the state in any way.

## III.

Equitable tolling under the *Andrews* factors is appropriate in this case, despite Griffin's failure to adhere strictly to the 30-day window of *Palmer*. None of this Court's precedents indicate that *Palmer* established a retroactive equitable tolling deadline for petitioners in Griffin's situation.[5] The starting point of these cases is the fact that the deadline has already passed. There is no question that Griffin's case was time-barred by § 2244(d)(1). Dismissal on the grounds of such untimeliness is certainly within the power of the courts. To avoid injustice, however, we have adopted a stay-and-abeyance procedure conditional on the 30-day time limits for cases where a dismissal might preclude a timely re-filed petition. Applied retroactively to dismissed cases, this stay-and-abeyance procedure effects mandatory equitable tolling when petitioners would have complied with the stay's conditions. This procedure outlined in *Palmer* and *Hargrove* is followed uniformly. Beyond this stay-and-abeyance procedure and its retroactive application prescribed in *Palmer*, our cases neither require *nor prohibit* a court from determining whether the limitations period should be equitably tolled under *Andrews*.

The notion that the operation of equitable tolling is dependent upon a litigant's compliance with an unknown, retroactive, hard 30-day deadline is inimical to equity itself. Equitable tolling is a "discretionary doctrine" that "does not lend itself to bright line rules." *Harris v. Hutchison*, 209 F.3d 325, 328 (4th Cir. 2000). Thus, we refuse to adopt the strict 30-day rule relied upon by the District Court that would reject all litigants in Griffin's position regardless of the equities involved. It should also be noted that we announce no general rule of equitable tolling that will sweep in all similarly-situated litigants. It remains a case-by-case determination. "The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule." *Rotella v. Wood*, 528 U.S. 549, 561 (2000).

For the reasons stated above, Griffin is not entitled to the mandatory tolling of the one-year limitations period prescribed by *Palmer*. But, her failure to comply with a retroactive time window does not support the conclusion that equitable tolling is unavailable. Griffin and her counsel were reasonably ignorant of the relevant filing time lines and the consequences of their delay. Thus, we REVERSE the dismissal of the District Court, equitably toll the limitations period, and REMAND this case for further proceedings in the District Court.

---

[5]In *Godbolt v. Russell*, 82 Fed. Appx. 447, 2003 WL 22734743 (6th Cir. 2003) (per curiam) (unpublished), the petitioner was dismissed for failure to exhaust state remedies. When the petitioner attempted to return to federal court, his action was dismissed as untimely. *Id.* at 448-49. On appeal, the petitioner argued that the District Court should have stayed rather than dismissed the original petition. *Id.* at 449. This Court affirmed the District Court's dismissal, finding that no error had been committed. *Id.*; *see also Barnard v. Conley*, 36 Fed Appx. 813, 815, 2002 WL 535787 (6th Cir. 2002) (unpublished) (affirming District Court's dismissal of an untimely habeas petition). The *Godbolt* Court further found that any error resulting from the dismissal was harmless as the petitioner did not comply with the 30-day time windows that would have accompanied such a stay. 82 Fed. Appx. at 452. Importantly, non-mandatory equitable tolling was not at issue, and as such was neither considered nor decided. Since those decisions, the Supreme Court has impliedly held that district courts indeed have the power to dismiss mixed petitions even if that dismissal endangers a petitioner's ability to re-file a habeas petition within the statutory limitations period. *Pliler v. Ford*, 124 S.Ct. 2441, 2446-47(2004). But, while these cases indicate that dismissal for mixed petitions remains appropriate under the AEDPA limitations period, they in no way block a court from considering whether equitable tolling is appropriate. In fact, in *Pliler*, the court indicated that on remand the court could conduct an equitable tolling analysis. *Id.* at 2447 ("We remand the case for further proceedings given the Court of Appeals' concern that respondent had been affirmatively misled . . . ."); *id.* at 2448 (O'Connor, J., concurring) ("Nevertheless, if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate.").

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge, dissenting. Although I have no problem with the legal principles laid out by the majority, I disagree with its application of those principles in the present case. Specifically, I believe that the majority's decision is contrary to the holding in *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), the very case upon which the majority relies. This court in *Palmer* **denied** equitable tolling to a defendant who had waited approximately two months to refile in federal court after exhausting his state-court remedies:

> [A]doption of the Second Circuit's approach [of allowing a 30-day safe harbor] in this case would not afford Palmer the relief he seeks. Although his state-court remedies were exhausted on March 22, 1999, he waited until May 24, 1999, before he returned to federal court and filed a second habeas petition. This wait amounted to more than the "normal" 30-day period suggested by the Second Circuit as a reasonable period for a petitioner to return to federal jurisdiction, and the record offers no reason for the two-month delay.

*Id.* at 781-82. Similarly, the record in the present case offers no reason for Griffin's delay, and the delay at issue here was six and a half months—over three times as long as the one in *Palmer*.

The majority's point that Palmer was a poor candidate for equitable tolling because he raised no federal constitutional claims, Maj. Op. at 7, appears to me to be irrelevant. Diligence is the key to equitable tolling, not the nature of the defendant's claims, and neither Palmer nor Griffin were diligent in pursuing the remedies available to them.

Furthermore, I believe that the majority's distinction between "mandatory equitable tolling" and "traditional equitable tolling," Maj. Op. at 8, is an artificial one not justified by any prior caselaw. The 30-day *Palmer* rule is better viewed as a safe haven—"a brief, reasonable time limit upon the petitioner to present claims to state courts and return to federal court . . . ." *Palmer*, 276 F.3d at 781. Under this analysis, the factors set out in *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988), and reaffirmed in *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001), are the same for all equitable tolling claims; but any delay beyond 30 days places the burden on the defendant to show reasonable diligence.

I acknowledge the majority's point that Griffin had no set deadline to return to state court, but she had to have been aware that AEDPA's one-year time limit had already expired. So she knew or should have known that time was of the essence in going to and from state court. Waiting six and a half months to go to state court—with no reasonable explanation—indicates to me a complete lack of diligence.

The majority's statement that the delay "certainly does not indicate 'an extraordinarily long period of unexplained idleness,'" Maj. Op. at 10, *quoting Cook v. Stegall*, 295 F.3d 517, 522 (6th Cir. 2002), confounds me. It certainly does! The only point being made by the court in *Cook* was that "nearly twelve years" was "an extraordinarily long period of unexplained idleness" after the expiration of the applicable statute of limitations. *Id.* *Cook* therefore provides no support for the majority's statement.

Furthermore, I find no basis to conclude that Griffin "was reasonably active in responding to the dismissal," Maj. Op. at 10, and I am unpersuaded by the majority's declaration that "six months for preparation and filing by a busy public defender's office is not unreasonable." *Id.*

Counsel's lack of diligence, moreover, is not a basis for equitable tolling. *See Andrews*, 851 F.2d at 151 (listing five factors to take into account in determining whether equitable tolling is justified, including the litigant's own diligence, but not including counsel's lack of diligence).

In sum, I find even less justification for the six-and-a-half-month delay in this case than for the two-month delay that was found to be unacceptably long in *Palmer*. I therefore believe that *Palmer* is controlling, and thus would **AFFIRM** the judgment of the district court.