**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0034n.06

**No. 08-1422**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jan 21, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ARCHIE LEE THOMAS, Jr., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENNETH ROMANOWSKI, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: BATCHELDER, Chief Judge; SUTTON, Circuit Judge; and WISEMAN, District Judge.[*]

SUTTON, Circuit Judge. Archie Lee Thomas, Jr. seeks relief from the district court's judgment that he did not timely file his petition for a writ of habeas corpus. Because Thomas did not satisfy the one-year time requirement for filing a habeas petition, *see* 28 U.S.C. § 2244(d)(1), and because he is not entitled to equitable tolling, we affirm.

I.

On April 4, 1994, a Michigan jury convicted Thomas of eleven felonies, including armed robbery and conspiracy to commit murder. The trial court sentenced him to life in prison. The state courts' direct review of his conviction concluded when, on January 30, 1998, the Michigan Supreme

---

[*]The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

-1-

Court denied reconsideration of his request to file a discretionary appeal. *See People v. Thomas*, 573 N.W.2d 624 (Mich. 1998).

On January 12, 1999, Thomas filed a federal habeas petition. *See* ROA 23; R.13; R.36 at 2. After the State pointed out that Thomas had not exhausted some of his claims, Thomas moved to dismiss the petition so that he could seek post-conviction review on the unexhausted claims in state court. On August 23, 1999, the district court dismissed Thomas's petition without prejudice.

On December 15, 1999, Thomas filed a writ of habeas corpus in state court, which the trial court denied on January 14, 2000. On March 16, 2000, he filed an original complaint for habeas relief in the Michigan Court of Appeals. In doing so, however, he failed to pay the filing fee, and when Thomas could not get the money from his prison account to pay the fee, the state court returned his pleadings and closed his file on June 8, 2000.

On September 21, 2000, Thomas was placed in solitary confinement, where he remained until November 13, 2000. On May 20, 2001, Thomas filed a motion for relief from the state trial court's judgment. The trial court denied the motion, and the court of appeals denied leave to appeal the trial court's decision. On July 29, 2002, the Michigan Supreme Court did likewise. *See People v. Thomas*, 649 N.W.2d 80 (Mich. 2002).

On September 13, 2002, Thomas filed a new federal habeas petition. On December 2, 2003, the district court dismissed the petition with prejudice because Thomas had failed to file the petition within the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 110 Stat. 1214. *See* 28 U.S.C. § 2244(d); R.36. On May 29, 2007, Thomas

filed a Rule 60 motion for relief from the judgment, claiming that *Griffin v. Rogers*, 399 F.3d 626

(6th Cir. 2005), permitted equitable tolling of the one-year limitation. The district court denied the

motion and we granted Thomas a certificate of appealability "as to whether his untimely habeas

petition warranted equitable tolling." Order Granting COA, No. 08-1422, Sep. 23, 2008.


II.


We give fresh review to Thomas's request for equitable tolling. *See Jurado v. Burt*, 337 F.3d

638, 642 (6th Cir. 2003). Thomas bears the burden of demonstrating that he is entitled to equitable

tolling, *see id.*, a form of relief that is frequently requested but infrequently granted, *see Dunlap v.*

*United States*, 250 F.3d 1001, 1008–09 (6th Cir. 2001). And we look at all of this through the lens

of the denial of a motion for relief from judgment, *see* Fed. R. Civ. P. 60(b)(6), which we review for

abuse of discretion and which requires a showing of "extraordinary circumstances." *Gonzalez v.*

*Crosby*, 545 U.S. 524, 535 (2005); *see Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009).


AEDPA gave Thomas one year after his state-court judgment became final to file his federal

petition. *See* 28 U.S.C. § 2244(d)(1)(A). On May 1, 1998, the time to seek review of the state

courts' initial denial of his request for post-conviction relief in the United States Supreme Court

ended. *See Jimenez v. Quarterman*, ___ U.S. ___, 129 S. Ct. 681, 685 (2009) ("[T]he conviction

becomes final when 'the time for filing a certiorari petition expires.'"). On January 12, 1999, less

than one year later—256 days later to be exact—Thomas filed his federal habeas petition. Thomas thus filed his first federal habeas petition on a timely basis.

When the State pointed out that Thomas had not exhausted some of his claims, Thomas chose to ask the court to dismiss all of his claims without prejudice rather than ask the court to dismiss only the unexhausted claims so that he could proceed with the exhausted claims at that point. The district court as a result dismissed the entire petition without prejudice. *See Rhines v. Weber*, 544 U.S. 269, 274 (2005). By the time the district court dismissed Thomas's petition, 479 days had run since the conviction became final. Although AEDPA's time limit does not run while "a properly filed application for State post-conviction" relief is pending, 28 U.S.C. § 2244(d)(2), it *does* run while the federal courts consider applications for habeas review, *see Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Accordingly, the statute of limitations continued to run and Thomas's window for filing a timely habeas petition closed during the district court's consideration of his first petition—more than three years before he filed his second petition in 2002.

Under these circumstances, as Thomas properly concedes, he must rely on equitable tolling to overcome the untimely filing of his second petition. To obtain such relief, he must show "that he has been pursuing his rights diligently" and that "extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quotations omitted). In evaluating whether a claimant has made this showing, we consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and

(5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). Not all factors matter in a given case; these considerations are by no means exhaustive; and we look at each request for relief on a case-by-case basis. *See id.* "[A]bsent compelling equitable considerations," as we have explained, "a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

Gauged by these considerations, Thomas does not deserve relief. Of critical import here is the matter of diligence. Even if we toll all delays attributable to circumstances beyond Thomas's control—even predictable circumstances—Thomas waited more than one year after his state court conviction became final until he filed his 2002 petition. At the outset, 256 days lapsed from May 1, 1998, the day after Thomas's deadline to appeal his state court conviction to the United States Supreme Court, until he filed his federal petition on January 12, 1999. That leaves 109 days in the one-year window.

Thomas took 114 days to return to state court after the district court dismissed his first petition. At this point, delays attributable solely to Thomas account for more than a year, namely five days more.

Thomas allowed another 46 days to lapse between the Michigan Supreme Court's denial of leave to appeal on July 29, 2002, and his petition for federal habeas corpus relief on September 13, 2002. Even though his deadline to request certiorari from the United States Supreme Court had not

yet expired when Thomas filed the federal petition, petitions for review of state post-conviction denials do not toll the one-year statute of limitations. *See Lawrence*, 549 U.S. at 331–32. That takes Thomas 51 days past the one-year deadline—based on delays attributable to him alone.

Thus, in the more than four years between when Thomas exhausted his direct appeal options and the filing of this federal petition, delays attributable solely to Thomas—not to federal or state courts, not to prison officials—amounted to 416 days. This lack of diligence strongly cuts against Thomas's request for relief, particularly since virtually all of his explanations for invoking equitable tolling turn on claims that others interfered in one way or another with his efforts to obtain federal (or state) relief. Those unwilling to help themselves are not compelling candidates for equitable assistance from the courts.

Invoking our decision in *Griffin v. Rogers*, Thomas disagrees. There, we granted equitable tolling to a petitioner whose pre-*Duncan* mixed petition of exhausted and unexhausted claims went beyond the one-year limit while the district court considered the petition. In doing so, we noted that the petitioner took six months to return to state court after the district court dismissed the petition, but we found that the delay was "not unreasonable." *Griffin*, 399 F.3d at 637. At the same time, *Griffin* "noted that we announce no general rule of equitable tolling that will sweep in all similarly-situated litigants," and maintained that equitable tolling is a "case-by-case determination." *Id.* at 639. "The virtue of relying on equitable tolling," we added, "lies in the very nature of such tolling as the exception, not the rule." *Id.*

If all that had happened here was that Thomas had taken six months from the district court's dismissal of his mixed petition to return to state court, *Griffin* might make a difference. But that is not all we have. More than three years lapsed between the dismissal of his initial petition and the filing of this petition. In *Griffin*, by contrast, the petitioner returned to federal court within thirteen months of the dismissal of his first petition. Although it took Thomas roughly four months to return to state court—compared with the six months it took the petitioner in *Griffin*—the assorted *other* delays for which Thomas must take responsibility add up to well more than a year. That Thomas navigated an admittedly complicated and changing area of law alone, without the help of counsel, does not change our conclusion. *See Graham-Humphreys*, 209 F.3d at 561 (remarking that "even a *pro se* litigant . . . is required to follow the law" in denying a plaintiff equitable tolling). It is difficult to say "extraordinary circumstances" blocked Thomas from meeting the deadline, *Lawrence*, 549 U.S. at 337, when so much of the delay was attributable to his actions and to his actions alone.

Thomas persists that he lacked actual and constructive knowledge of the limitations period. But "ignorance of the law alone is not sufficient to warrant equitable tolling." *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004). No doubt, in 1999, Thomas may not have foreseen the Supreme Court's 2001 *Duncan v. Walker* decision, holding that § 2244(d)(1) does not toll the statute of limitations while a federal habeas petition is pending. *See* 533 U.S. at 181–82. But he had every reason to know about AEDPA's one-year limitations period because the district court mentioned the statute in dismissing his first petition. Even if he reasonably believed that the time limit had not yet expired at that point, he had every reason to know that he could not return at his leisure.

That the district court's initial dismissal order was "without prejudice" adds little to his claim. No time limit issue had yet been raised by the parties, so Thomas could not reasonably assume that the court's order meant anything more than this: that he could return to federal court after exhausting his unexhausted claims to file a *timely* petition, not that he could wait well beyond the one-year limit to file a new petition.

Thomas tries to save his actual/constructive knowledge argument by pointing out that the district court said nothing of deadlines or timeliness or statutes of limitations in dismissing his petition in 1999. That is true, but it is irrelevant. "District judges have no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (holding that judges are not required to warn litigants of AEDPA time limits). Although case law concerning the application of AEDPA's statute of limitations to mixed petitions of exhausted and unexhausted claims was "unstable and unsettled" at the time, *Griffin*, 399 F.3d at 637, it did not say that petitioners could take the slow train in returning to state court for post-conviction proceedings. Nowhere in its 1999 opinion does the district court suggest that it indefinitely tolled the AEDPA time limit pending state court review, and Thomas could not reasonably presume otherwise from the court's silence.

One other thing. It bears emphasis that this case comes to us not as an appeal from a district court decision denying habeas relief, which Thomas never filed, but as an appeal from a district court decision denying Rule 60(b)(6) relief. In this setting, we give the district court's decision "only limited and deferential review" and will overturn its judgment only if we come to a "definite and

firm conviction that the trial court committed a clear error of judgment." *Thompson*, 580 F.3d at 442

(quotation marks omitted). For the reasons given, the explanations offered by Thomas for the three-

year gap between the dismissal of his initial petition and the filing of this petition do not compel us

to conclude that the district court abused its discretion in denying Rule 60(b)(6) relief. *See Crosby*,

545 U.S. at 535.

III.

For these reasons, we affirm.