RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DANIEL MARTIN PIRKEL,

　　　　　　　*Petitioner-Appellant*,

　　　*v.*

DEWAYNE BURTON, Warden,

　　　　　　　*Respondent-Appellee*.

No. 19-1349

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cv-00205—Robert J. Jonker, District Judge.

Argued:  June 9, 2020

Decided and Filed:  August 14, 2020

Before:  CLAY, ROGERS, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Sundeep Iyer, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant. Scott Shimkus, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON BRIEF:**  Sundeep Iyer, Neal Kumar Katyal, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant.  Scott Shimkus, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

BERNICE BOUIE DONALD, Circuit Judge.  Daniel Pirkel has long been seeking appellate representation to help him attack his no contest plea to a series of crimes for which he was convicted in 2008.  He filed pro se appeals before the Michigan Court of Appeals and the

Michigan Supreme Court, but, without the benefit of appellate counsel, he lost those appeals. Next, he filed a pro se 28 U.S.C. § 2254 habeas petition in federal court, challenging the Michigan courts' procedure in allowing his appellate counsel to withdraw and failing to appoint replacement counsel. The district court did not appoint counsel and denied Pirkel relief. Now, with the benefit of counsel, Pirkel's claims are clear. At the outset, we note that the right to counsel is fundamental to our adversary system. Here, however, the Michigan trial court failed to conduct its own review of the merits of Pirkel's appeal before allowing Pirkel's appellate counsel to withdraw based on a conclusory statement that he could not find any issues to appeal. The Constitution requires more before a court allows counsel to withdraw. Thus, in denying Pirkel's claims on appeal, the Michigan courts unreasonably applied clearly established federal law announced by the Supreme Court. Accordingly, Pirkel is entitled to a new first-tier appeal in the Michigan courts that complies with the guarantees of the Constitution. We REVERSE and REMAND.

## I.

The State of Michigan charged Pirkel with seventeen different crimes in just a few short months. Michigan charged Pirkel with criminal sexual misconduct and accosting a minor based on Pirkel's actions on May 25, 2007. Next, on June 5, 2007, Pirkel entered a supermarket in Three Rivers, Michigan, and grabbed the buttocks of a female employee. Employees then reported seeing Pirkel pull the fire alarm. Police quickly arrested Pirkel in the store's parking lot while he was trying to gain entry into his car. Police recovered a loaded rifle from the car and found that Pirkel was wearing boots that had been stolen from the store. Based on this incident, the State of Michigan charged Pirkel with carrying a concealed weapon, possessing a loaded firearm in a vehicle, misdemeanor retail fraud, and misdemeanor assault and battery.

On June 16, 2007, Pirkel stole a four-wheeler. After crashing the four-wheeler in the woods, Pirkel began fleeing, but officers were tracking him. Pirkel exchanged gunfire with the police. During this exchange, Pirkel was struck in the buttocks with a bullet. Pirkel then jumped into the water, and the police could see only his head. The officers, now in boats, approached Pirkel and told him to keep his hands above the water, but Pirkel would not and yelled, "Just shoot me. You're going to have to shoot me. Just kill me." At some point, Pirkel pulled out a

knife.  When Pirkel partially emerged from the water during the chase, an officer used his taser on Pirkel's back.  After Pirkel started submerging again, the officer shut off the taser, but Pirkel came up again with his knife in hand.  When Pirkel tried to climb into one of the boats, a different officer kicked Pirkel hard.  The officer then used his taser several more times as Pirkel continued to swing the knife and refused to put it down.  Eventually officers got the knife away from Pirkel.  Pirkel continued to try to flee, and one of officers used mace on Pirkel.  Pirkel continued to struggle and try to flee throughout the encounter, but eventually officers handcuffed him and transported him to the hospital for treatment for his wounds.

According to the police report, officers Mirandized and interrogated Pirkel right after they arrested him.  Pirkel told officers where he dropped his gun.  He also stated that he knew he was shooting at police and was trying to get them to shoot back and kill him.  He noted that he had recently tried to commit suicide and reiterated his hope that the police would kill him.

Based on this incident, the State of Michigan charged Pirkel with eleven crimes:  two counts of assault with intent to murder, resisting and obstructing an officer causing serious impairment, receiving and concealing stolen property, four counts of assault with a dangerous weapon, resisting and obstructing an officer causing injury, fleeing and eluding a police officer, and possession of a firearm during the commission of a felony.

### Plea Hearing

The Michigan trial court held a plea hearing on January 24, 2008.  Pirkel initially expressed some reservations about entering his plea:  "I understand [the plea deal] but I don't know, I'm just reading stuff right now for the first I've ever read it—or known about it, but I—I feel like I'm getting my arm twisted to do it."  The court then allowed Pirkel roughly ninety minutes to read police reports regarding his most recent slate of charges.  When the court reconvened, Pirkel indicated that he had an opportunity to review those documents.

Pirkel pleaded no contest to all of the charges except the criminal sexual conduct and accosting a minor charges, which the government agreed to drop in exchange for Pirkel's plea. The trial court explained that it would treat Pirkel's no contest plea the same as a guilty plea. Pirkel stated that he understood the plea agreement.  The court listed the charges and the

maximum punishments for each. Pirkel then pleaded no contest to each charge. Pirkel stated that no one had threatened him or promised him anything in exchange for his plea, and he agreed that he was pleading no contest of his own free will. With agreement from Pirkel's counsel, the government then made an offer of proof on the charges against Pirkel. While the government made a full offer of proof on the earlier charges against Pirkel, it simply admitted the police reports for the later charges without objection. Finally, the court accepted Pirkel's no contest plea.

***Sentencing***

Prior to sentencing, Pirkel sent a letter to the trial court expressing concerns with his representation and his plea. He wrote:

> I am under duress by my own counsel and I feel from the start that they have not been working for me. I feel like a lamb being led to the slaughter. I am in no way comfortable with anything pertaining to my case such as my plea, my lawyers, and my mental state. All in all with the above court proceedings I feel it has been a lie and I don't trust my lawyers. I asked Mr. Bush to postpone my sentencing because I didn't understand all of my charges plus I feel that I was pressured to take an unfair plea that I did not want to take. It is my hopes that you will find in this letter reason enough to help me in any way you see fit.

At the beginning of the sentencing hearing, Pirkel's attorney also asked the court to adjourn sentencing because he and Pirkel had only recently received the pre-sentence report. In response to the letter, the trial court stated that it had reviewed a tape of Pirkel's plea hearing and would not allow Pirkel to withdraw his plea. The court refused to appoint new attorneys, but it gave Pirkel and his attorneys about forty minutes to talk through the pre-sentence report before reconvening. The court then heard arguments from both sides, including Pirkel himself, on the length of the sentence. Before announcing the sentence, the court stated that "[i]n reading the reports, it—it made sense to me, your behavior, when it came out that you were trying to get them to kill you and not intending to—to kill them necessarily, although you shot in their direction." The court then sentenced Pirkel to 20 to 50 years in prison on the two counts of assault with intent to murder and to two years in prison for a firearms offense, run consecutively to the main sentence. The court ran the rest of the sentences concurrently to the sentence for the assault with intent to murder.

***Appeal and Withdrawal***

Pirkel requested and was appointed appellate counsel: John Ujlaky.  In a letter, Ujlaky advised Pirkel that he "found no issue of even colorable merit to pursue on [Pirkel's] behalf," finding that Pirkel's plea was freely, knowingly, and voluntarily given without any issues in the scoring of the sentencing guidelines.  Ujlaky asked Pirkel to agree to terminate Ujlaky's appointment as appellate counsel.  Although we do not have Pirkel's letter in return, Pirkel appears to have responded to Ujlaky's letter raising several issues, including withdrawing his plea and ineffective assistance of counsel.  Ujlaky responded, "[Y]ou totally lost me about withdrawing your plea, to wit: . . . ineffective assistance of counsel."  Ujlaky then filed a motion to withdraw with the trial court.  In the motion, Ujlaky stated that he had made a full review of the transcripts and other pertinent documents in the case; that he had regularly corresponded with Pirkel; that he communicated with Pirkel's trial counsel, Howard Bush; and that he had provided advice to Pirkel.  Ujlaky declared that he "was unable to find, ascertain, or locate any meritorious issue, a colorable issue, or an arguably valid issue to pursue."  He noted that "Pirkel's No Contest Plea and Sentence were both procedurally and substantively correct and proper."

The trial judge, who had also presided over Pirkel's plea and sentencing, held a hearing on Ujlaky's motion on June 30, 2008.  Ujlaky reiterated the same things that he said in his motion.  The court then asked if Pirkel had anything to add, and Pirkel asked if the court had received his letters.  In one of the letters, Pirkel complained about Ujlaky's representation:

> Mr. John Ujlaky . . . has failed to cooperate with Defendant and to give proper recommendations. . . .  Within a month of being appointed as counsel, Mr. Ujlaky has shown a reluctance to allow Defendant time to research any possible issues and give copies of all transcripts.  Counsel has failed to give any helpful advice. . . .  Defendant has found issues pertaining to but not limited to major errors in the plea proceeding[,] [a]long with ineffective assistance of counsel . . . .  I ask this court to dismiss this attorney and appoint new counsel.

Ujlaky explained that he had not yet given Pirkel the transcripts but planned to when he finished representing Pirkel.  Ujlaky also addressed Pirkel's concerns about ineffective assistance of counsel:

> Well, just with regard to ineffective assistance of trial counsel.  This was a freely, voluntarily given plea by Mr. Pirkel, as appears on the record.  I don't find

anything off record because, as I understand the circumstances, Mr. Pirkel was reluctant to go to trial on the [sexual misconduct charges] that [were] ultimately dismissed.

. . .

Also, Mr. Pirkel went to the Forensic Center, both for the ability to stand trial and—and also with regard to criminal responsibility. He was found mentally capable of standing trial. They found that there—he was capable of being criminally responsible.

In light of the—the requirements that this Court has in taking the plea to make sure that it's freely, knowingly, and voluntarily given, and when a Defendant says, "Yes, it is, Your Honor," they cannot come back later pursuant to court rule. And case interpretations that say freely, voluntarily given you can't come back at a later date and attack the plea.

At that point, Pirkel interrupted and said, "For that reason—for ineffective assistance of counsel, you can." Neither the court nor Ujlaky responded to Pirkel. Instead, the trial court immediately announced its ruling: "Mr. Ujlaky is asking to withdraw so I'll grant his request to withdraw." The trial court also declined "to appoint a new attorney." The court explained that its "only obligation is to appoint one attorney for appellate review in a plea case. I don't have to appoint another attorney, especially after the first one has found no grounds for appeal." The trial court also entered a written order allowing Ujlaky to withdraw without elaborating on its ruling.

Pirkel then filed another motion for appointment of appellate counsel, but the trial court denied the motion. Again, Pirkel argued that Ujlaky failed to raise his ineffective assistance of trial counsel claim, but the trial court dismissed this argument again, reasoning that Ujlaky's "review of the record indicated that Mr. Pirkel was fully advised of his trial rights that he was not threatened or promised anything more then [sic] the plea agreement and that all procedures were followed during the sentencing." The court then reiterated that it "is obligated to appoint one counsel for appellate reasons; there is no obligation to appoint successor counsel when the first does not find any appealable issues."

**State Court Appeals**

Pirkel then filed a delayed pro se appeal. First, he argued that his trial counsel, Bush, was ineffective for failing to investigate whether his confession was voluntary, failing to investigate a possible defense to the assault with intent to murder charges, and failing to properly advise Pirkel

that he would be waiving his right to appeal these issues. As a part of these claims, Pirkel stated that he told Bush that he did not remember making a confession, but Bush did not respond and only glared at him. Pirkel also claimed that he did not remember receiving medical attention or Miranda warnings before being interrogated and confessing.

Next, Pirkel argued that his appellate counsel, Ujlaky, was ineffective for failing to raise an ineffective assistance of counsel claim and for improperly withdrawing from the case. Finally, he argued that the trial court violated the Constitution by refusing to appoint new appellate counsel after Ujlaky withdrew.

The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."

Pirkel then appealed to the Supreme Court of Michigan. Again, Pirkel argued that his trial counsel was ineffective for failing to investigate the voluntariness of his confession and for failing to explain that he would waive his right to challenge the confession by pleading no contest. He also argued that his appellate counsel, Ujlaky, was ineffective for the same reasons that he argued before the court of appeals. Finally, Pirkel again argued that the trial court violated the Constitution for failing to appoint new counsel after Ujlaky withdrew. The Supreme Court of Michigan declined to hear the appeal because it was "not persuaded that the questions presented should be reviewed by the Court."

### *Habeas Petition*

Pirkel filed a habeas petition before the district court on March 2, 2011. He moved for an evidentiary hearing and appointment of counsel, but the magistrate judge denied those motions. In his pro se habeas petition, Pirkel raised similar claims to those he had raised in his direct appeals. In response, the government agreed that Pirkel had "raised the instant claims on direct appeal and, therefore, exhausted his state remedies." The magistrate judge, however, raised the exhaustion issue sua sponte.

As relevant to this appeal, the magistrate judge found that Pirkel failed to exhaust several claims: (1) the motion for withdrawal of appellate counsel was unfair because Pirkel's counsel

did not represent his interests; (2) the trial court acted unfairly because it did not require Ujlaky to advocate on behalf of Pirkel; (3) the trial court abused its discretion by failing to appoint new appellate counsel; and (4) the Michigan Court of Appeals abused its discretion when it failed to appoint new appellate counsel.

Rather than dismissing Pirkel's habeas petition, the magistrate judge held the case in abeyance to give Pirkel an opportunity to exhaust these claims or amend his petition and drop the unexhausted claims. Pirkel asked the magistrate judge to waive the exhaustion requirement, or, alternatively, to proceed only with his exhausted claims. In response, the magistrate judge dismissed the unexhausted claims and allowed Pirkel to proceed on the exhausted claims. Pirkel also filed an objection in the district court based on the magistrate judge's decision, arguing that he had exhausted these claims and that the magistrate judge abused his discretion by raising exhaustion sua sponte even though the government had waived exhaustion. The district court overruled the objections, finding that the magistrate judge had "applied the appropriate law of exhaustion to the facts of this habeas case."

The magistrate judge then made a report and recommendation on the claims that he determined that Pirkel had exhausted. The magistrate judge found that Pirkel exhausted the following arguments related to his claims that the Michigan courts violated his constitutional right to counsel on appeal: (1) the trial court allowed Ujlaky to withdraw without filing a proper brief; (2) the trial court did not have an adequate basis for determining that there were no arguable issues on appeal before allowing Ujlaky to withdraw; and (3) the trial court violated Pirkel's Fourteenth Amendment rights by adjudicating the deficient motion to withdraw. Again, the magistrate judge recommended denying Pirkel relief on these grounds, finding that the trial court "had adequate grounds to allow Ujlaky's withdrawal."

Pirkel filed objections to the magistrate judge's report and recommendation. Although the objections were filed late, the district court accepted them and then performed a de novo review of the report and recommendation. The district court overruled the objections and adopted the magistrate's report and recommendation. The district court dismissed the claims and denied Pirkel a certificate of appealability (COA).

*Certificate of Appealability*

Pirkel then filed an application for a COA and for appointment of counsel from this Court. The Court granted the motion, appointed counsel, and allowed Pirkel to proceed on the following claims: (1) whether his plea was rendered involuntary by ineffective assistance of trial counsel; (2) whether appellate counsel performed ineffectively by failing to raise this claim of ineffective assistance of trial counsel; (3) whether the trial court violated Pirkel's constitutional rights by allowing appellate counsel to withdraw without arguing any issues on Pirkel's behalf and by failing to appoint replacement counsel; (4) whether the respondent waived any exhaustion defense; and (5) whether Pirkel was entitled to an evidentiary hearing.

## II.

In reviewing a district court's decision to dismiss a habeas petition, we typically review its legal conclusions de novo and its factual findings for clear error. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). "However, where, as here, the district court does not itself conduct an evidentiary hearing and relies instead exclusively on the state-court record, we review the district court's factual findings de novo." *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (per curiam). The district court's decision to raise exhaustion sua sponte is reviewed for an abuse of discretion. *See Day v. McDonough*, 547 U.S. 198, 210 (2006); *Granberry v. Greer*, 481 U.S. 129, 134-36 (1987). But we review the underlying exhaustion issue de novo. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006).

The standard to be applied by the district court, however, is very deferential because Pirkel's habeas claims are reviewed pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA).[1] Under AEDPA,

> a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) the

---

[1]Pirkel's motion for leave to appeal was denied by the Michigan Court of Appeals "for lack of merit in the grounds presented," which is an adjudication on the merits subject to AEDPA. *See Werth v. Bell*, 692 F.3d 486, 491, 494 (6th Cir. 2012).

> state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (citation omitted) (quoting 28 U.S.C. § 2254(d)). "Only when fair-minded jurists could not disagree that a state court's merits decision conflicts with Supreme Court precedent may a federal court issue a writ of habeas corpus." *Barton*, 786 F.3d at 460. When the state court does not adjudicate the issues on the merits, then AEDPA deference does not apply. *Id.* When state appellate courts have not given reasons for their decisions on the merits, then we "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . [and] presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## III.

On appeal, Pirkel argues that the Michigan courts violated his constitutional rights by depriving him of counsel on direct appeal. Initially, we address exhaustion because the magistrate judge erred in finding that Pirkel failed to exhaust part of this claim. Meanwhile, Supreme Court case law makes it clear that certain procedures are constitutionally required before depriving an indigent defendant of his right to counsel on first-tier review of a criminal conviction. Here, the State of Michigan's procedures were clearly invalid under existing Supreme Court precedent. Because those procedures are invalid, Pirkel was left without counsel on appeal, and we, therefore, presume that Pirkel has suffered prejudice. Accordingly, Pirkel is entitled to a new appeal in the State of Michigan that complies with the Fourteenth Amendment of the U.S. Constitution.

### A. Exhaustion

Initially, we address exhaustion, as the magistrate judge and district court judge both found that Pirkel had failed to exhaust part of his deprivation-of-counsel claim. We review the substance of the lower court's decision de novo, as previously discussed in Section II. Among other claims, the magistrate judge found that Pirkel failed to raise his claim that "the trial judge abused his discretion when he failed [to] appoint new counsel to represent petitioner in his first-tier review of his conviction contrary to *Halbert*[*v. Michigan*], 545 U.S. 605 [(2005)]," before

both the Michigan Court of Appeals and Supreme Court of Michigan.  Pirkel objected, and the district court adopted the magistrate judge's recommendation to dismiss the unexhausted claims.

Both parties, however, now agree that the district court and magistrate judge were mistaken.  The parties are correct.  Before the Michigan Court of Appeals, Pirkel explicitly stated, in the heading of his brief, that "the trial court abused it's [sic] discretion and violate[d] the federal Constitution's Sixth and Fourteenth Amendments by refusing to appoint new appellate counsel to assist Defendant in persuing [sic] his first-tier review."  Further, Pirkel even cited *Halbert* in the body of his brief.  Before the Supreme Court of Michigan, he also argued that the trial court violated his constitutional rights by failing to appoint new counsel.  He even noted that this was the trial court's "most significant" error.

Thus, Pirkel did not fail to exhaust this claim, and we will review his claim.[2]

---

[2]Pirkel also asks us to find that the magistrate judge abused his discretion in raising the exhaustion issue *sua sponte*.  We need not reach this decision, but we note that we are troubled with the process that the magistrate judge used in this case.  First, the magistrate judge, relying on pre-AEDPA case law, found that "the district court can and must raise the exhaustion issue *sua sponte*."  As previously discussed in Section II, however, the Supreme Court has said otherwise.  *See Granberry*, 481 U.S. at 133; *cf. Day*, 547 U.S. at 209.

We also have other concerns, especially as to whether the Respondent deliberately waived its exhaustion defense here.  *See Wood v. Milyard*, 566 U.S. 463, 466 (2012) (holding that it is an abuse of discretion for the court to raise a defense deliberately waived by the state).  Here, Respondent made a statement regarding exhaustion in their response to Pirkel's habeas petition, stating that Pirkel "raised the instant claims on direct appeal and, therefore, exhausted his state remedies."  We have stated that there are no "magic words" for waiver, and we ask whether the party "intentionally gave up [his] right to raise exhaustion."  *D'Ambrosio v. Bagley*, 527 F.3d 489, 497 (6th Cir. 2008).  Meanwhile, other circuits have held that a state's concession of exhaustion before the district court is an express waiver of the exhaustion requirement under § 2254(b)(3).  *Sharrief v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009); *accord Pike v. Guarino*, 492 F.3d 61, 71-73 (1st Cir. 2007) (finding that the state waived its exhaustion defense when it stated that it believed that the petitioner was correct in her assertion that the claims had been exhausted); *Kerns v. Ault*, 408 F.3d 447, 449 n.3 (8th Cir. 2005) (finding that the government waived its exhaustion defense when it incorrectly stated in its briefing before the district court that it had previously conceded the exhaustion issue); *Dorsey v. Chapman*, 262 F.3d 1181, 1187 (11th Cir. 2001) (finding that the state waived the exhaustion defense when it "expressly declined to raise this defense," even if that decision was based on an incorrect belief); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) (finding that the state waived its exhaustion argument when it stated that the petitioner "ha[d] sufficiently exhausted his state remedies as required").

The magistrate judge also did not consider the interests of comity and federalism.  *See Granberry*, 481 U.S. at 134.  Finally, we have concerns about whether the magistrate judge gave Pirkel fair notice and opportunity to present his position on the exhaustion issue.  *Day*, 547 U.S. at 210.

**B. Right to Appellate Counsel and Constitutional Procedure for Withdrawal**

There is no question that the Constitution required the State of Michigan to appoint appellate counsel to Pirkel. In *Halbert v. Michigan*, the Supreme Court held that "the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." 545 U.S. at 610. In reaching its decision, the Supreme Court noted the difficulties of "[n]avigating the appellate process without a lawyer's assistance" and how Michigan's appellate process can "intimidate the uncounseled." *Id.* at 621-22. Citing *Anders v. California*, 386 U.S. 738, 744 (1967), the Court noted that "when a defendant's case presents no genuinely arguable issue, appointed counsel may so inform the court." *Halbert*, 545 U.S. at 623.

Before discussing *Anders*, we first address several cases leading to that decision. In *Ellis v. United States*, 356 U.S. 674, 675 (1958), the Supreme Court stated that "allowance of an appeal should not be denied until an indigent has had adequate representation by counsel." The Supreme Court began sketching an outline for what an attorney and court must do before an attorney is allowed to withdraw: a "conscientious investigation" by counsel; the court's satisfaction that the attorney made a diligent investigation of the possible grounds of appeal; and the court's agreement with counsel's evaluation of the case. *Id.*

Next, in *Douglas v. California*, 372 U.S. 353, 354-55 (1963), the Supreme Court examined California's procedure for appointing counsel to indigent defendants, under which the California courts of appeal would go through the record and determine whether counsel would be helpful to the defendant or the court. If the court decided that counsel would "be of no value," then the indigent defendant was left without counsel. *Id.* at 355. The Supreme Court struck down this practice, reasoning that "where the merits of the *one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." *Id.* at 357 (emphasis added). The Court concluded,

> There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is

unclear or the errors are hidden, has only the right to a meaningless ritual, while
the rich man has a meaningful appeal.

*Id.* at 357-58.

Then, in *Swenson v. Bosler*, 386 U.S. 258, 259 (1967), the Supreme Court examined Missouri's procedure, which allowed appellate attorneys to withdraw if they filed a motion for new trial and notice of appeal. Even though a motion for new trial in Missouri required attorneys to set forth any grounds for relief, the Supreme Court found the practice unconstitutional. *Id.* at 258-59. The Court reasoned that "[t]he assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript may well be of substantial benefit to the defendant." *Id.* at 259. The Court concluded, "This advantage may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right." *Id.*

In its seminal case *Anders v. California*, the Supreme Court examined counsel's withdrawal after sending a short letter to the court, stating that he would not file a brief because he believed there was no merit to the appeal. 386 U.S. at 742. In the letter, counsel also advised that he had visited and communicated his views to Anders. *Id.* The Supreme Court found this procedure improper and then laid out the proper procedure: (1) counsel may request permission to withdraw after a conscientious examination of the case if she finds the case "wholly frivolous," but counsel must file a brief alongside that request referring to anything in the record that might arguably support the appeal; (2) the defendant must be provided with counsel's brief and allowed time to raise any points he chooses to; and (3) the court must then do its own investigation to determine whether the case is "wholly frivolous." *Id.* at 744. The Court stated that this procedure "will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Id.* at 745.

In *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429 (1988), the Supreme Court examined Wisconsin's rule for allowing counsel to withdraw. In addition to the *Anders* requirements, Wisconsin also required its attorneys to include in their briefs to the appellate

court "a discussion of why the issue lacks merit." *Id.* at 430 (quoting Wis. R. App. P. 809.32). In *McCoy*, the defendant's attorney argued that this requirement was unconstitutional because it would "be both unethical and contrary to *Anders* to discuss the reasons why the appeal lacked merit." *Id.* at 432. The Supreme Court rejected this argument, explaining that "the central teaching of *Anders*" is that counsel must determine that the appeal is "wholly frivolous" after "master[ing] the trial record, thoroughly research[ing] the law, and exercis[ing] judgment in identifying the arguments that may be advanced on appeal." *Id.* at 438-39. The Court explained that both the attorney and the court must determine that "the appeal lacks any basis in law or fact." *Id.* at 438 n.10. The Court also discussed counsel's duty to file a "brief referring to anything in the record that might arguably support the appeal." *Id.* at 439 (quoting *Anders*, 386 U.S. at 744). The Court explained the importance of this requirement:

> That requirement was designed to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability. The *Anders* requirement assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase—a diligent and thorough review of the record and an identification of any arguable issues revealed by that review. Thus, the *Anders* brief assists the court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.

*Id.* (footnotes omitted). Ultimately, the Supreme Court concluded that Wisconsin's requirement did not offend the Constitution. *Id.* at 444.

The Supreme Court examined the issue again in *Penson v. Ohio*, 488 U.S. 75 (1988). In *Penson*, the defendant's appellate attorney filed "a conclusory statement" that the case had no merit and then requested to withdraw. *Id.* at 78. The Ohio Court of Appeals then allowed counsel to withdraw and stated that it would later independently review the record to determine whether any error existed. *Id.* The Supreme Court held that this procedure violated the Constitution for two reasons: "First, the motion should have been denied because counsel's [conclusory statement] failed to draw attention to 'anything in the record that might arguably support the appeal[;]'" and second, "the Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's

evaluation of the case was sound." *Id.* at 81-83 (quoting *Anders*, 386 US. at 744).  The Court explained that these requirements had been discussed at length in *Anders*, *Ellis*, and *McCoy*.  *Id.*

Finally, in *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme Court synthesized this line of cases while examining California's new procedure for allowing withdrawal.  In California, an appellate attorney who concluded that an appeal would be frivolous was required to file a brief summarizing the procedural and factual history of the case with citations to the record.  *Id.* at 265.  The attorney had to also attest that he reviewed the record, explained his evaluation of the case to the client, provided the brief to the client, and informed the client of his right to file a pro se brief.  *Id.*  The attorney was also required to ask the appellate court to independently review the record for arguable issues and express his availability to brief any issues on request from the court.  *Id.*  The appellate court then had to conduct its own independent review of the record.  *Id.*  If the court determined that the appeal was frivolous, it could affirm; otherwise, it could order briefing on whatever nonfrivolous issues it discovered. *Id.* at 266.

In deciding whether this rule was constitutional, the Supreme Court first clarified that the procedure from *Anders* is "prophylactic," and "the States are free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel." *Id.* at 265.  The Court explained that the Equal Protection and Due Process clauses of the Fourteenth Amendment "require that a State's procedure 'affor[d] adequate and effective appellate review to indigent defendants.'"  *Id.* at 276 (alteration in original) (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956)).  The procedure must "reasonably ensure that an indigent's appeal will be resolved in a way that is related to the merit of that appeal."  *Id.* at 276-77.

The Supreme Court then explained the requirements necessary to ensure compliance with the Constitution.  First, the Court noted that the State's process must "ensure that those indigents whose appeals are not frivolous receive the counsel and merits brief required by *Douglas*."  *Id.* at 277.  Next, the Court explained that a state may not "allow[] counsel to withdraw before the court ha[s] determined whether counsel's evaluation of the case was accurate."  *Id.* at 280 (citing *Penson*, 488 U.S. at 82-83).  Forgoing this key step is "a basic violation of the *Douglas* right to have counsel until a case is determined to be frivolous and to receive a merits brief for a

nonfrivolous appeal." *Id.* "[A] one-paragraph letter from counsel stating only his 'bare conclusion' that the appeal ha[s] no merit" is insufficient. *Id.* at 280-81. Finally, the court noted that providing only one tier of review before allowing counsel to withdraw is a procedural flaw. *Id.* at 281.

The court reasoned that California's procedure did not suffer from these flaws and overall afforded "adequate and effective appellate review for criminal indigents." *Id.* at 284.

## C. The Procedure Used by the Trial Court Violates the Constitution

In this case, the procedure used by the trial court and Pirkel's attorney did not "affor[d] adequate and effective appellate review to" Pirkel. *Id.* at 276 (alteration in original) (quoting *Griffin*, 351 U.S. at 20). The procedure suffered from almost every defect that the Supreme Court has repeatedly warned is constitutionally inadequate.

First, and most fundamentally, the Michigan procedure failed to provide two-tier review. *Smith*, 528 U.S. at 281. Essential to all of the *Anders*-like procedures that have been upheld by the Supreme Court was a determination whether there were appealable issues *by the appellate court*, not the very court appealed from. However, in this case, the trial court, "who understandably had little incentive to find any error warranting an appeal," *id.*, was the same court who decided to allow Ujlaky to withdraw and refused to provide replacement counsel.

Next, Ujlaky failed to file a brief drawing attention to anything in the record that might arguably support Pirkel's appeal. *Penson*, 488 U.S. at 81; *McCoy*, 486 U.S. at 439; *Anders*, 386 U.S. at 744. Instead, in his motion, Ujlaky merely asserted that he could not find any meritorious issues and failed to point to any issues in the record or provide Pirkel any basis for his pro se appeal.

Finally, the trial court failed to conduct an independent determination of the merits of Pirkel's appeal. *Smith*, 528 U.S. at 279-80; *Penson*, 488 U.S. at 82-83; *McCoy*, 486 U.S. at 438 n.10, 439; *Anders*, 386 U.S. at 744; *Ellis*, 356 U.S. at 675. In fact, the trial court never made any determination of the merits of Pirkel's appeal, relying instead on Ujlaky's determination. Further, even after Pirkel requested the appointment of new appellate counsel, the court merely

reiterated that Ujlaky's "review of the record indicated that Mr. Pirkel was fully advised of his trial rights that he was not threatened or promised anything more then [sic] the plea agreement and that all procedures were followed during the sentencing." At no point did the court ever say that it conducted its own investigation to determine whether Pirkel's appeal had merit.

With these flawed procedures, it is clear that Pirkel did not "receive adequate and effective appellate review." *Smith*, 528 U.S. at 284.

Further, the Michigan Courts, in deciding otherwise, reached a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Fair-minded jurists could not disagree that the Michigan decisions conflict with Supreme Court precedent. *See Barton*, 786 F.3d at 460. Respondent essentially concedes this point by not even attempting to argue that the procedure used by the Michigan courts was valid. Accordingly, we conclude that, even under AEDPA deference, the Michigan courts erred in denying Pirkel the protections required by the Constitution.

Finally, we presume prejudice because Pirkel was effectively denied counsel on appeal. When a defendant is left without counsel on appeal, it is "inappropriate to apply either the prejudice requirement of *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] or the harmless-error analysis of *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Penson*, 488 U.S. at 88-89; *see also Smith*, 528 U.S. at 286 ("[W]hile we normally apply 'a strong presumption of reliability' to judicial proceedings and require a defendant to overcome that presumption, when, as in *Penson*, there has been a complete denial of counsel, we understandably presume the opposite." (citation omitted) (quoting *Strickland*, 466 U.S. at 692, 696)). In *Hughes v. Booker*, 220 F.3d 346 (5th Cir. 2000), a case involving another constitutionally inadequate procedure for withdrawal of appellate counsel, the Fifth Circuit reasoned that "once we determine that a defendant has been constructively denied appellate counsel—as we have here—'any discussion even flirting with the language of Strickland's prejudice or harmless error analysis is unnecessary.'" *Id.* at 353 (quoting *Lombard v. Lynaugh*, 868 F.2d 1475, 1487 (5th Cir. 1989) (Goldberg, J., specially concurring)). The Fifth Circuit explained that "[i]t is not the role of [federal appellate courts] to scour the record—unassisted by an *Anders* brief, any explanation of why the appeal is frivolous

by appellate counsel, or a state court ruling—in an effort to identify nonfrivolous appellate issues." *Id.* Here, the same is true, and we, therefore, presume prejudice.

## IV.

Because Pirkel was denied counsel on appeal through unconstitutional procedures, and presuming prejudice, we find that Pirkel is entitled to a new appeal before the Michigan Court of Appeals that complies with the constitutional demands announced in *Ellis*, *Anders*, *Douglas*, *McCoy*, *Penson*, and *Smith*. On remand, the district court shall issue a conditional writ of habeas corpus, ordering Pirkel's release if the State of Michigan does not grant him a new state court appeal with the constitutional protections specified in this opinion within a time to be determined by the district court.[3]

For the foregoing reasons, we REVERSE and REMAND.

---

[3]Having found that Pirkel is entitled to a new first-tier appeal, we need not address his other arguments, as we will allow the Michigan courts to first entertain Pirkel's ineffective assistance of trial counsel claim with the benefit of the constitutional protections required. We will also allow the Michigan court to determine whether Pirkel is entitled to an evidentiary hearing. Finally, we need not address Pirkel's additional exhaustion arguments because they are now moot.