RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DORREON D. MCBRIDE,

                             *Petitioner-Appellant*,

    *v.*

GREGORY SKIPPER, Warden,

                             *Respondent-Appellee*.

No. 21-1042

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cv-13525—Denise Page Hood, District Judge.

Argued: October 27, 2022

Decided and Filed: August 4, 2023

Before: SILER, NALBANDIAN, and READLER Circuit Judges

───────────────

## COUNSEL

**ARGUED:** Brett Wierenga, JONES DAY, Washington, D.C., for Appellant. Autumn A. Gruss, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Brett Wierenga, JONES DAY, Washington, D.C., for Appellant. Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. A Michigan jury convicted Dorreon McBride of murder. After unsuccessfully contesting his conviction in state court, he sought federal habeas relief. But because he failed to exhaust one of his claims in state court, the district court dismissed his

petition without prejudice. Rather than return to state court to litigate his unexhausted claim or refile in federal court without the unexhausted claim, McBride moved to reconsider. In doing so, he cited for the first time the Supreme Court's decision in *Rhines v. Weber*, which gives courts facing habeas petitions with both exhausted and unexhausted claims two options besides dismissal. The district court denied his motion. McBride now argues that the district court should have sua sponte considered alternatives to dismissal. We disagree and **AFFIRM** the district court's judgment.

## I.

On June 22, 2015, following the Detroit Freedom Festival fireworks display, members of Paul Mitchell's family argued with a group of neighborhood men over a carelessly thrown firecracker. The conflict escalated when a man wearing a black shirt with a red, orange, and yellow flame design arrived and pulled out a gun. Tensions temporarily subsided when members of the family fled to their home and the armed group walked away. But the night turned more explosive.

Mitchell and his cousin, Otis Parker, got into Mitchell's truck to go buy drinks. As they drove, shots were fired, killing Mitchell. Parker recognized the man with the black shirt as one of the shooters. Other witnesses who were present for the initial altercation identified the man in the black shirt as Dorreon McBride.

The government charged McBride with first degree murder, assault with intent to commit murder, carrying a concealed weapon, and carrying a firearm during the commission of a felony. McBride went to trial in state court in December 2015. A jury convicted him on the concealed carry charge but hung on the other charges. In a second trial in May 2016, a jury convicted McBride on the remaining charges.

McBride appealed his convictions to the Michigan Court of Appeals. He argued that the trial court erred in failing to admit his full police interview and that the evidence presented at trial could not support his convictions. He also argued that his counsel was ineffective.

While his appeal was pending, McBride filed two motions for remand requesting a hearing (called a *Ginther* hearing under Michigan law) to present evidence of his counsel's ineffectiveness.[1]  The court of appeals denied both motions.  McBride filed a motion for reconsideration, which the court of appeals also denied.  On January 23, 2018, the court of appeals affirmed his convictions.  *People v. McBride*, No. 333637, 2018 WL 521824, at *1, *6 (Mich. Ct. App. Jan. 23, 2018) (per curiam).

McBride next filed an application for leave to appeal to the Michigan Supreme Court, which was denied.  *People v. McBride*, 913 N.W.2d 304 (Mich. 2018) (order). McBride moved to reconsider, filing a pro se brief in support.  In this brief, he alleged for the first time that his due process rights were violated during his pretrial detention.

The Michigan Supreme Court, however, returned this brief because McBride was represented by counsel.  On October 2, 2018, the Michigan Supreme Court denied McBride's motion for reconsideration.  *People v. McBride*, 917 N.W.2d 641 (Mich. 2018) (order). McBride's direct appeal concluded 90 days later, on December 31, 2018.  At this point, the "availability of direct appeal to the state courts" and the United States Supreme Court had "been exhausted." *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  This left him with one year to file a federal habeas claim from that date.  28 U.S.C. § 2244(d)(1).

McBride filed that habeas petition in November 2018.  He challenged his convictions on three grounds: (1) his due process and *Miranda* rights were violated during his arrest and detention; (2) his trial counsel was ineffective; and (3) the trial court and Michigan Court of Appeals erred in various evidentiary rulings.  The government moved to dismiss McBride's petition, arguing that the first claim had not been exhausted.  McBride argued that the motion should be denied.

On September 30, 2019, the district court granted the government's motion to dismiss all claims without prejudice, citing the unexhausted first claim as the basis for dismissal.  The court declined to issue a certificate of appealability.  Rather than refile his petition without the

---

[1]In the alternative, McBride requested that his conviction be vacated as based on insufficient evidence or that a new trial be ordered.

unexhausted claim or return to state court, McBride moved for reconsideration on October 11, 2019.  In this motion, he argued for the first time that his exhausted claims should be allowed to proceed under *Rhines v. Weber*, 544 U.S. 269 (2005).  On December 1, 2020, the district court denied the motion for reconsideration.  By that time, the statute of limitations period on McBride's habeas petition had run.

McBride filed a timely notice of appeal and application for a certificate of appealability, which we granted.

**II.**

"In reviewing a district court's decision to dismiss a habeas petition, we typically review its legal conclusions de novo[.]"  *Pirkel v. Burton*, 970 F.3d 684, 691 (6th Cir. 2020).  This includes a district court's conclusion that a habeas petitioner has not satisfied the exhaustion requirement.  *Id.* at 691–92.[2]

We review for abuse of discretion a district court's denial of a motion to alter or amend a judgment under Rule 59(e).  *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 798–99 (6th Cir. 2018).  And a district court abuses its discretion when it makes a clear error of judgment or rests its decision on a legal error.  *See United States v. Dubrule*, 822 F.3d 866, 879 (6th Cir. 2016). "We review de novo any legal conclusions the district court reached in the course of assessing a motion under Rule 59."  *Id.* at 799.  "The court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision."  *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).

**III.**

This case is about what a district court must do with habeas petitions containing unexhausted claims.  There is no dispute, for purposes of this appeal, that McBride presented a

---

[2]We review a district court's denial of a stay of a mixed habeas petition—that is, a habeas petition with both exhausted and unexhausted claims—for abuse of discretion. *Carter v. Mitchell*, 829 F.3d 455, 464 (6th Cir. 2016).  But McBride didn't ask for a stay in his initial petition.  Instead, the central question presented by McBride is a legal one:  whether the district court, on its own initiative, was required to consider *Rhines*'s stay-and-abeyance procedure.

mixed petition—i.e., a petition containing exhausted and unexhausted claims.**3**  And there's no dispute that McBride, in the face of the government's argument that he did not exhaust all of his claims, only argued that he did exhaust all of his claims.  Losing on that argument can result in dismissal.  *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  Nevertheless, McBride now claims that the trial court erred in failing to stay his habeas petition while he exhausted his claims or to allow him to delete his unexhausted claims and proceed with the exhausted ones.  So the question is:  must a district court consider alternatives to dismissal when a petitioner doesn't ask for them?  The answer is no.

Historically, courts had to "dismiss habeas petitions containing both unexhausted and exhausted claims."  *Rose v. Lundy*, 455 U.S. 509, 522 (1982).  There were no alternatives to dismissal.  But the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year statute of limitations on the filing of habeas corpus petitions.  *Matthews v. Abramajtys*, 319 F.3d 780, 787–88 (6th Cir. 2003).  In response, some courts recognized alternatives to dismissal, *see, e.g.*, *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002) (adopting stay-and-abeyance procedures), because the interplay between AEDPA's one-year statute of limitations and *Lundy*'s dismissal requirement created difficulties for petitioners.  The filing of a federal habeas petition does not toll the statute of limitations.  *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).  So if a district court judge dismissed a mixed petition on exhaustion grounds close to the one-year deadline, chances are that the doors to federal court would be shut.

In *Rhines*, the Supreme Court held that courts may consider alternatives to dismissal.  It laid out two alternatives.  First, district courts have "discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition."  *Rhines*, 544 U.S. at 271–72.  In other words, district courts can stay and hold in abeyance a petitioner's claims.  *Id.* at 277–78.  This procedure allows the petitioner to return to state court to fully litigate his unexhausted claims while the district court holds his exhausted claims in abeyance.  *Id.* at 275–76.

But in affording the courts discretion to follow that procedure, the Court noted that a stay and abeyance has the potential to "undermine [AEDPA's] twin purposes" of exhaustion and

---

**3**McBride assumes for purposes of appeal that his first claim is unexhausted.

finality, and so "should be available only in limited circumstances." *Id.* at 277. A court should grant a stay and abeyance only when (1) "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court"; (2) where the unexhausted claims are not "plainly meritless"; and (3) where "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 277–78.

In addition, the Supreme Court recognized a second option. When a petitioner asks the district court for a stay-and-abeyance but the court finds a stay-and-abeyance to be inappropriate, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278; *see Lundy*, 455 U.S. at 520 (noting that petitioners can delete unexhausted claims). Post-*Rhines*, we've said that the district court can do "one of four things" when faced with a mixed petition:

> "(1) dismiss the mixed petition in its entirety, . . . (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, . . . (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, . . . or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims ha[ve] any merit." *Harris v. Lafler*, 553 F.3d 1028, 1032–33 (6th Cir. 2009).

True, *Rhines* affirms that courts have alternatives to dismissal. But *Rhines* doesn't necessarily answer the question before us today. That is because *Rhines* addressed whether a district court, when asked for a stay, had the authority to grant one. *Rhines* says yes, assuming the three-part stay-and-abeyance test is met. Put another way, a lower court "err[s] to the extent it conclude[s] that stay and abeyance is always impermissible." *Rhines*, 544 U.S. at 279.[4]

---

**4**Shortly after *Rhines*, the Supreme Court vacated and remanded a decision for further consideration in light of *Rhines*. *See Akins v. Kenney*, 341 F.3d 681 (8th Cir. 2003), *vacated and remanded*, 125 S. Ct. 1723 (2005). Pre-*Rhines*, the Eighth Circuit had determined that a district court has "no authority" to hold a habeas petition in abeyance "absent truly exceptional circumstances." *Akins*, 341 F.3d at 686 (citation omitted). The petitioner didn't meet that high bar, so the Eighth Circuit concluded that the district court didn't abuse its discretion in "not granting a stay sua sponte." *Id.* Neither the Supreme Court nor the Eighth Circuit on remand revisited the question of a district court's authority to grant a stay sua sponte post-*Rhines*, though the Eighth Circuit did remand to the district court, stating that "Akins must be given an opportunity" to demonstrate that he meets the stay-and-abey factors. *Akins v. Kenney*, 410 F.3d 451, 456 (8th Cir. 2005); *see Akins*, 125 S. Ct. 1723.

Here, the district court did not need to raise alternatives to dismissal on its own volition. In this context, we do not require district courts to make arguments that petitioners—even pro se petitioners—fail to make. Federal district court judges have "no obligation" to warn a pro se petitioner about how a circuit's stay-and-abey procedure or AEDPA's 1-year statute of limitations would impact his mixed petition. *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

Also relevant is the Supreme Court's pre-*Rhines* decision in *Pliler*. There, the Court rejected the Ninth Circuit's then-procedure for managing mixed petitions. *See Pliler*, 542 U.S. at 231. The Ninth Circuit provided a three-step stay-and-abeyance procedure and required district courts to raise this procedure sua sponte and to inform petitioners about their options with regard to mixed petitions. *Id*. at 230–31. Without speaking to the propriety of the stay-and-abeyance procedure itself, the Court rejected the Ninth Circuit's practice of requiring district courts to inform litigants of their options because "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants." *Id*. at 231. It continued: "Requiring district courts to advise a *pro se* litigant [on federal habeas procedure] would undermine district judges' role as impartial decisionmakers." *Id*.

Three principles from *Pliler* are informative. First, in this context, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants." *Id.* Second, we do not require district courts to take up "potentially burdensome, time-consuming, and fact-intensive" investigations. *Id.*; *see also Aruanno v. Sherrer*, 277 F. App'x 155, 158 (3d Cir. 2008) (recognizing that a district court is not required to "perform . . . tasks" to help petitioner "uncover" arguments it can assert in support of a stay). Third, a district court runs the risk of misleading petitioners when it takes on the role of an advocate. *Pliler*, 542 U.S. at 231. For example, maybe the use of a stay-and-abeyance procedure would not benefit a petitioner with weak unexhausted claims. *Id.* at 232. "And it is certainly the case that not every litigant seeks to maximize judicial process." *Id.* The burden ultimately lies with a petitioner to choose a path and advocate for it. *Compare Lundy*, 455 U.S. at 520 (noting that a petitioner can always amend his petition to delete the unexhausted claims), *with Pliler*, 542 U.S. at 231 (noting that federal district court judges are not required to explain the details of federal habeas procedure); *see also Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) ("[Petitioner] is ultimately the one

responsible for the status of [his] petition, not the district court.  Having knowingly added an unexhausted claim to [his] petition, [petitioner] cannot now lay blame at the feet of the district court.").

Under these principles, Petitioner's argument for sua sponte consideration is not well taken. Indeed, after *Rhines*, the Ninth Circuit interpreted *Pliler* "to make[] it clear that district courts are not required to consider sua sponte the stay-and-abeyance procedure." *Robbins v. Carey*, 481 F.3d 1143, 1148 (9th Cir. 2007).  The court reasoned that "there is no difference between 'considering' a procedure and notifying a party about the possibility of that procedure, because in both cases the district court must sua sponte inform the party of the procedure, partly so that the petitioner may decide which option to pursue." *Id.* at 1149.  So requiring a court to sua sponte "consider" a procedure is barred by *Pliler* in the same way that informing a party is. *Id.* at 1148 ("Such a mandatory action by the trial judge falls within the set of 'chores' targeted by the Supreme Court in *Pliler*.").  And finally, the court concluded that *Rhines* "does not detract from the holding of *Pliler*." *Id.* at 1149.

Our interpretation of *Pliler* is consistent with how we view other non-jurisdictional-but-threshold barriers.[5]  For example, a district court is "permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006); *see also Thomas v. Romanowski*, 362 F. App'x 452, 456 (6th Cir. 2010) (explaining that judges are not required to warn litigants of AEDPA time limits); *Torres v. Davis*, 416 F. App'x 480, 481 (6th Cir. 2011) (same).[6]  And "Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may[, but are not required to,] raise a petitioner's procedural default," *Day*, 547 U.S. at 206 (collecting cases); *Trest v. Cain*, 522 U.S. 87, 89–90 (1997).

---

[5]Exhaustion is not a jurisdictional requirement.  *See Harris*, 553 F.3d at 1032.

[6]*See also Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) ("[P]*ro se* litigants, like all others, are deemed to know of the one-year statute of limitations.  Indeed, any such requirement of actual notice would virtually eviscerate the statute of limitations.  Thus, the law does not require a court, sua sponte, to remind a *pro se* litigant that he has only one year to file his claim."); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("In light of the holdings in *Rhines* and *Pliler*, [a decision allowing the reopening of a previously dismissed habeas petition] cannot be read to require the reopening of a voluntarily dismissed habeas case where the one-year time limit of Rule 60(b) has expired.").

McBride argues that our Circuit "has repeatedly directed district courts to consider the *Rhines* [stay-and-abeyance] factors before dismissing mixed petitions." (Pet. Brief at 17.) But the cases that McBride points to aren't in the posture of his case. In those cases, we remanded for other reasons, like when we determined for the first time on appeal that certain claims were unexhausted, *see Robinson v. Horton*, 950 F.3d 337, 347 (6th Cir. 2020), or because the district court should have granted a motion to amend a habeas petition with a claim that was not plainly meritless, *see Cowan v. Stovall*, 645 F.3d 815, 819–21 (6th Cir. 2011). And while we've discussed the options that district courts can consider on remand, we've left it to the district court and the parties to determine the best course of action. *See id.* At most, we've encouraged district courts to consider stay and abeyance where we've found that the unexhausted claims likely were not plainly meritless. *See Wagner v. Smith*, 581 F.3d 410, 419–20 (6th Cir. 2009); *Cowan*, 645 F.3d at 820–21; *Hickey v. Hoffner*, 701 F. App'x 422, 426 (6th Cir. 2017). But that's hardly a command to consider *Rhines* sua sponte.

McBride also says that even where a stay is inappropriate, *Rhines* requires district courts to allow petitioners to delete their unexhausted claims. (Pet. Brief at 17.) Two points in response. First, it is unclear why the district court, by dismissing McBride's petition without prejudice for want of exhaustion with three months remaining on the limitations clock did not "allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims" under *Rhines*. 544 U.S. at 278. A petitioner "can always amend [his] petition to delete the unexhausted claims," *Lundy*, 455 U.S. at 520, but a district court is not required to counsel a petitioner to do so, *Pliler*, 542 U.S. at 231. Second, as we've discussed, we read *Rhines* to trigger a series of obligations once a petitioner requests a stay. *See supra* at 6. McBride didn't request a stay and therefore did not trigger any *Rhines* obligations for the district court. *See Thompson v. Sec'y for Dep't of Corr.*, 425 F.3d 1364, 1366 (11th Cir. 2005) ("[T]he district court offered the petitioner a choice . . . to delete the unexhausted claims[.] . . . But that choice should only be offered if a stay is unwarranted. Because we cannot discern from the district court's order whether it considered the three *Rhines* factors, we vacate its order dismissing the habeas petition and remand for further consideration."); *cf. Van Durmen v. Smith*, No. 13-1522, 2014 WL 11070972, at *3 (6th Cir. Dec. 12, 2014) (remanding because the district court's judgment against a petitioner's stay request suffered from "conflicting findings and conclusions"

where it adopted the magistrate judge's recommendation to dismiss the petition but the magistrate judge determined that dismissal without prejudice could impair the petitioner's right to federal relief).**7**

And, in any event, it's not clear that dismissal here "unreasonably impair[ed] [McBride's] right to obtain federal relief" such that deleting unexhausted claims from his petition would be favored. *Rhines*, 544 U.S. at 278. McBride had a three-month window to refile or perfect his petition. *Cf. Banks v. Jackson*, 149 F. App'x 414, 421–22 (6th Cir. 2005) (involving a habeas claim where the statute of limitations ran); *Dixon*, 847 F.3d at 718 (same). He did neither, even though the district court provided guidance on how to proceed in state court. (R. 12, E.D. Mich. Order, p. 4.)

All told, district courts do not have to consider and inform petitioners of alternatives to dismissal when petitioners do not raise them.

## IV.

Putting aside whether the district court needed to raise *Rhines* on its own, McBride argues that the district court erroneously believed that, when faced with a mixed petition, its only course of action is dismissal. He claims this alleged misapprehension amounted to an abuse of discretion. *See Campanella v. Com. Exch. Bank*, 137 F.3d 885, 892–93 (6th Cir. 1998) (finding the district court abused its discretion where it did not recognize that it had supplemental jurisdiction). For support, he points to the government's motion to dismiss, which said that the court had to dismiss his entire petition under *Lundy*, without mentioning the alternatives offered in *Rhines*.

But we don't automatically transfer a litigant's error or omission to a court. In the cases that McBride cites to support his argument, we found that a district court either erroneously

---

**7**McBride cites *Banks v. Jackson* in support of his argument. 149 F. App'x 414, 422 (6th Cir. 2005). But the passage he quotes mischaracterizes *Rhines* to say that "if the district court determines that a stay is inappropriate, the district court *must* allow the petitioner to delete the unexhausted claims," *id.* (emphasis added), when *Rhines* instead says that, in such a circumstance, the court "*should* allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278 (emphasis added).

reasoned or misapplied the law. *See, e.g.*, *United States v. Gibbs*, 506 F.3d 479, 487–88 (6th Cir. 2007); *United States v. Jackson*, 244 F. App'x 727, 728 (6th Cir. 2007); *Campanella*, 137 F.3d at 892–93. Here, the district court never stated that it had to dismiss McBride's claims based on *Lundy*. Although it did not explicitly discuss the alternatives laid out in *Rhines*, that does not mean that it was unaware that there were alternatives. All McBride relies on is the following statement: "Petitioner is required to exhaust state court remedies, but has not done so. The motion [to dismiss the petition] will be granted." (R. 12, E.D. Mich. Order, p. 4.) Without more, there is nothing to suggest that the court misapprehended its authority or abused its discretion.

## V.

Following the court's dismissal of his petition, McBride filed a motion for reconsideration under Rule 59(e), which allows a court to alter or amend a judgment. Fed. R. Civ. P. 59(e); *see Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833 (6th Cir. 2019) (discussing the proper grounds for a Rule 59(e) motion). McBride argues that the district court's failure to consider alternatives to dismissal was a clear error of judgment. Alternatively, he argues that the district court's decision resulted in "manifest injustice" because it left him in prison for life with no recourse to have his federal claims heard. (Pet. Brief at 25.)

In McBride's motion for reconsideration, he cited *Rhines*, suggesting for the first time that the district court should have considered alternatives to dismissal. Generally, a court need not consider a new argument on a motion to reconsider. *See Banister*, 140 S. Ct. at 1703 ("In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued."). For this reason alone, McBride's argument is not well taken. *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("[A] petitioner fil[ing] a Rule 59(e) motion . . . may request only that the district court reconsider matters actually raised before it. This is because, as this court has repeatedly held, Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment.").

And even if we were to construe McBride's motion for reconsideration according to the liberal standards afforded to pro se petitioners, (Pet Rep. Br. at 14), the district court did not commit a clear error of law. This is because a district court does not have an obligation to

consider alternatives to dismissal when they aren't presented by the petitioner, *see supra* p. 7, 9, so a district court's failure to do so cannot be a clear error of law.

There is also nothing to suggest that affirming the district court's decision would work a "manifest injustice" on McBride. *Cont'l Cas. Co.*, 941 F.3d at 833 (citation omitted). McBride takes issue with the fact that, by the time the district court ruled on his motion for reconsideration, the statute of limitations had run. But absent exceptional circumstances, it is not a manifest injustice to deny a motion to reconsider, particularly where the petitioner was aware of and had the opportunity to correct flaws in his filings. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (noting that if plaintiffs were liberally allowed to amend their complaints after adverse judgment, "plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision'" (citation omitted)); *see also Clark v. United States*, 764 F.3d 653, 662 (6th Cir. 2014) (explaining that when the defendant entered a nolo contendere plea and a guilty plea, "claims first presented in [the] postjudgment second motion to amend do not demonstrate that her conviction or indictment constituted 'manifest injustice.'" (citation omitted)); *Rockwell*, 217 F.3d at 425 (requiring dismissal where the district court erroneously permitted the petitioner to include unexhausted claims, since both parties and the court knew that the claims were unexhausted). McBride had three months to correct flaws in his petition and chose not to do so.

Finally, McBride's complaints about the length of his sentence and his trial history are unconvincing. McBride was duly tried and convicted by a jury of his peers. That one jury was hung does not negate his conviction. It is true that he had the right to contest errors in his trial at the federal level via a habeas petition. Still, he needed to go through the proper channels to do so. It is due to his own failure to (1) exhaust his claims and (2) make an argument for stay and abeyance that he cannot now present his claims. After the district court's September 2019 dismissal, McBride had three months to either return to state court or delete his unexhausted claim and refile in federal court. *See also Holbrook*, 833 F.3d at 613; 28 U.S.C. § 2244(d)(1). He chose not to do so, but to instead raise a new *Rhines* argument in a motion to reconsider. We

may sympathize with his circumstances, but we cannot say the district court abused its discretion.

## VI.

For these reasons, we affirm the district court's decision to dismiss McBride's claim without prejudice.